# McCoach *v.* Philadelphia, Appellant.

*Municipalities—Police officers—Demotion or removal from office—Appointing power—Acts of June 1, 1885, P. L. 37; March 5, 1906, P. L. 94, and June 25, 1919, P. L. 581—Words and phrases.*

1. Unless restrained by statute, a city of the first class may promote, demote or discharge a policeman at will, under the rule that the power which appoints may remove.

2. The Act of June 25, 1919, P. L. 581, supersedes the acts of June 1, 1885, P. L. 37, and March 5, 1906, P. L. 94, and is the sole guide in matters relating to the removal or demotion of police officers in cities of the first class.

3. Under section 16 of article XIX of the Act of 1919, a policeman, being in the classified service, cannot be reduced "because of his political or religious opinion or affiliations."

4. Not decided whether the first paragraph of section 18, of the same article, relates to policemen.

5. Par. 2, sec. 18, of the act, providing that no police officer "shall be removed or discharged except for cause upon written charges, and after an opportunity to be heard in his own defense," does not apply to a reduction in pay or position, and therefore a policeman who has been demoted is not entitled to an "opportunity to be heard in his own defense."

6. If it appears that the cause assigned for the demotion of a policeman was a just cause, not religious or political, and a written

statement thereof was given to him, and opportunity allowed him to give a written answer thereto, he cannot complain of the action of the power that appointed him in demoting him.

7. The word "removed" will not be construed to signify "reduced" or "demoted," in view of its popular meaning, and its use in other portions of the act.

*Appeal—Question not raised in court below—Jurisdiction.*

8. Where a question goes to the jurisdiction, the appellate court should decide it although it was not raised in the court below.

Mr. Justice KEPHART dissented.

Argued January 17, 1922. Appeal, No. 117, Jan. T., 1922, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1920, No. 1576, for petitioner, in case tried by the court without a jury, in suit of David McCoach v. City of Philadelphia, J. Hampton Moore, Mayor, and James T. Cortelyou, Director of Public Safety. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Petition for mandamus. Before ROGERS, J.

The opinion of the Supreme Court states the facts.

Petition granted: 30 Pa. Dist. R. 597. Defendants appealed.

*Error assigned,* inter alia, was order, quoting record.

*Marshall A. Coyne,* Assistant City Solicitor, with him *David J. Smyth,* City Solicitor, for appellant.—Mandamus is not the proper remedy in this case; nor can the courts review the findings of the trial board in any form of proceeding: Gallagher v. Blankenberg, 248 Pa. 394.

Under article XIX, section 18, of the Charter Act, which provides for dismissal of police and firemen from the service after trial in the manner prescribed by the act, it is contended that this is the exclusive and only manner by which these officers may be dismissed. More-

over, the judgment of the tribunal thus appointed for that purpose, in the absence of such fraud or deceit as ordinarily will vitiate any procedure, is final and conclusive.

*J. Washington Logue*, for appellee.—The method of removing and demoting an officer, provided by the legislature, must be strictly followed: Com. v. Black, 201 Pa. 433; Truitt v. Phila., 221 Pa. 333.

OPINION BY MR. JUSTICE WALLING, March 20, 1922:

The plaintiff, David McCoach, has been a police officer of the City of Philadelphia for forty years and was a captain of police from 1902 until 1920. In the latter year charges were preferred against him, to which an answer was filed and the case heard by the civil service commission, who sustained certain of the charges and ordered the demotion of McCoach to the position of lieutenant. The order being enforced, he sought restoration to his former rank by a petition for a writ of mandamus, to which return was made, and the court below (jury trial being waived) heard the case, filed an opinion and made an order granting the petition; from which the defendant city and its proper officers brought this appeal.

The decision of the trial court was based upon its finding that no competent evidence was submitted to the commission in support of the charges. Such finding, if correct, might entitled petitioner to relief by mandamus had he been removed or discharged from the force; but no law seems to prevent the demotion of a policeman without formal proceedings before the civil service commission. Unless restrained by statute, a city may promote, demote or discharge a policeman at will, under the rule that the power which appoints may remove; but section 1 of article III of the Act of June 1, 1885 (P. L. 37, 41), known as "The Bullitt Bill," protected police-

men and firemen from dismissal, except by the decision of a court of inquiry, created and acting as therein provided; this was reënacted by the Act of 1906, P. L. 94, 95 (which became a law because not returned by the governor within thirty days after the adjournment of the legislature), but was superseded by the more elaborate Act of June 25, 1919, P. L. 581, entitled "An Act for the better government of cities of the first class of this Commonwealth," which, in addition to expressly repealing the Act of 1885 (reënacted by the Act of 1906, above referred to), repealed also the Act of March 5, 1906, P. L. 83, relied on by the court below, and provides in section 1 of article XIX (Act of 1919, P. L. 613), that "From and after the effective date of this article, all appointments, transfers, reinstatements, promotions, reductions, suspensions, removals and dismissals, in the civil service of such city, shall be made in accordance with the terms and provisions of this article and the rules prescribed thereunder." This clearly leaves the Act of 1919 as the sole guide in matters like the present, in cities of the first class. Bearing in mind that what we are here considering is not an appointment, suspension, removal or dismissal, but simply a reduction in position and pay, let us see what the Act of 1919 provides in regard thereto.

By section 16 of the same article (P. L. 619), it is provided that "No person in the classified service or seeking admission thereto, shall be appointed, promoted, suspended, reduced or removed or in any way favored or discriminated against because of his political or religious opinions or affiliations. No inquiry in any application, examination or investigation shall relate to the religious or political affiliations of any person." Under this section, plaintiff, being in the classified service, could not be reduced "because of his political or religious opinions or affiliations"; but, since the petition for the writ of mandamus does not aver he was reduced because of either of these reasons, we need consider that section no further.

The first paragraph of section 18 of the same article (P. L. 620) provides: "No officer, clerk or employee in the classified civil service of such city shall be removed, discharged or reduced in pay or position except for just cause, which shall not be religious or political. Further, no such officer, clerk or employee shall be removed, discharged or reduced, except during the probationary period, until he shall have been furnished with a written statement of the reasons for such action and be allowed to give the removing officer such written answer as the person sought to be removed from office may desire. In every case of such removal or reduction a copy of the statement of the reasons therefor and of the written answer thereto shall be furnished to the civil service commission and entered upon its public records." If we assume, because of the general language used, that this paragraph relates to policemen, though we do not so decide, because of the specific provision next to be quoted (Buckley v. Holmes, 259 Pa. 176, 189; Phila. v. Com., 270 Pa. 353), appellee is not helped, for no trial or hearing is required: Thomas v. Connell, 264 Pa. 242. On the same assumption, all that appellee had the right to under this section, was that the cause assigned be a just one, not religious nor political, and the reasons given in this case are ample, if true, to justify the demotion. Neither the court below nor this court is charged with an inquiry into the truth or falsity of the causes alleged; and since there is no trial to be had, the accused is not entitled to such clear specifications as would otherwise be required.

The next paragraph of the act is the only one having any further bearing on the question at issue here, and is as follows: "No police officer or fireman except those dismissed during the probationary period shall be removed or discharged except for cause upon written charges, and after an opportunity to be heard in his own defense." It will be noted that this does not relate to reduction in pay or position, but only to cases of removal or discharge, and therefore in the former instances a police officer or

fireman is not entitled to "an opportunity to be heard in his own defense." It follows that as appellee was reduced and not removed or discharged, it is wholly immaterial what evidence was taken before the civil service commission or in the court below; the matter was one for the appointing power alone, where, as here, there was a just cause stated, not religious or political, a written statement thereof given to the policeman and he allowed to give a written answer thereto.

We cannot construe the word "removed" to signify "reduced" or "demoted"; such is not its popular meaning, especially when referring to a public official. Moreover, in other clauses of the Act of 1919, as above quoted, where the legislature meant "reduced" it used that word and its omission when referring to police officers and firemen indicates a legislative intent to make a distinction. The use of the words "removed or discharged" does not signify that either means "reduced." It is our duty to construe the law as written and that of the legislature to make or modify it. True, the question upon which we decide this case was not raised in the lower court, nor by counsel here; but, as it goes to the jurisdiction to grant the relief sought, we cannot ignore it.

The judgment of the court below is reversed and set aside.


DISSENTING OPINION BY MR. JUSTICE KEPHART:

By the opinion of the majority of this court, any officer in the police force may be demoted without trial, without reason given or cause shown, merely on the order of the director of public safety. This, notwithstanding the fact that the City Charter Act was designed to frustrate this very purpose.

Even prior to that act, before a demotion could take place, an officer had the right to trial before a "board" composed of three persons, and the city charter, to further protect civil service employees, enlarged the power

of that commission as a disciplinary body, and used this positive, direct and convincing language:

Article XIX, section 1: "All appointments, transfers, reinstatements, promotions, reductions, suspensions, removals, and dismissals......shall be made in accordance with the terms......of this article and the rules prescribed thereunder."

Section 18 of article XIX reads: Par. 1. "No officer, clerk, or employee......shall be removed, discharged, or reduced in pay or position, except for just cause,...... [nor] until he shall have been furnished with a written statement of the reasons for such action, and be allowed to give the removing officer such written answer as the person sought to be removed from office may desire."

Par. 2. "No police officer or fireman......shall be removed or discharged, except for cause, upon written charges, and after an opportunity to be heard in his own defense."

Under the opinion of the majority of this court, "demotion" is not included in, nor has it a meaning similar to, "reduction," "removal" or "dismissal," as used in section 1, article XIX; nor is it thus considered in the first paragraph of section 18; and the second paragraph, according to that opinion, relates solely to discharge from service; the word "removed" is held equivalent to "discharged," which assigns no meaning to it at all. I think the court is in error in deciding this case as it does, for the following reasons:

How was the matter regarded before it reached this court? Counsel for the City of Philadelphia make this statement of fact in their paper-book: "The appellee was *removed* from the office of captain of police of the City of Philadelphia pursuant to charges filed against him on June 7, 1920, by the director of the department of public safety." The attorney for Captain McCoach, appellee, agrees to this statement of fact. Both parties considered Captain McCoach's situation as a "removal" within the second paragraph of section 18. The city in-

voked the provision of this paragraph to sustain the charges it submitted. What it wanted was to have Captain McCoach discharged. The Civil Service Commission agreed with the city on some of the charges filed, but sentenced him to removal or demotion instead of discharge.

The officer was demoted under the second paragraph. He was not furnished "with a written statement" of reasons for demotion, or allowed to give a written answer to the officer under the first paragraph; his first notice came from the secretary of the Civil Service Commission, advising him charges had been filed by the director of public safety "under article XIX, section 18, of the Act of June 25, 1919," and that the commission had fixed a time for hearing. The petition for mandamus avers that the action of the director was unjustified, unwarranted, and appellee was unlawfully deprived of his right to fill the position of captain. As a fact, then, he was demoted or removed after a hearing, under the second paragraph, by the director, who, under the act, is required to do so by and upon the order of the commission.

When this case was in the court below, and afterwards before this court, there was no question concerning the authority of the commission to act. The position now assumed, on which this judgment rests, was raised for the first time by this court; it was not discussed by the court below nor here by counsel on either side. The paper-book filed by the city contains four specific charges of error against the court below: (a) mandamus is not the proper remedy; (b) the action of the commission cannot be reviewed in any court in any form; (c) the evidence was sufficient to convict the captain of misconduct; (d) the notes of testimony taken before the commission were improperly admitted in evidence.

In the statement of questions involved, the city predicates its right to reversal on these grounds: statutory requirements having been complied with, the court has no power to review the finding of the commission upon the

notes of testimony taken before it; mandamus will not lie; the common pleas cannot retry the case on the merits; and the facts justified the action of the commission. There is, of course, no assignment of error that will sustain the action of this court for the reasons given in the majority opinion.    The parties submitted themselves entirely to the jurisdiction of the commission and the court, so far as this question is concerned, and I think they were entirely correct in so considering it; as I view the case, under either paragraph of section 18, Captain McCoach was illegally demoted or removed, and I do not believe he could be *demoted or removed except under the City Charter Act.*

The majority opinion holds that no charges against officers were necessary, as the director of public safety had power to demote (remove) an officer without a hearing or cause assigned therefor.    We start with this premise: All changes in civil service employees must be made as directed by the charter act.    It would seem section 1, article XIX, quoted above, used words sufficiently comprehensive to embrace all possible changes in police officers, by the use of such words as "reductions, suspensions, removals and dismissals."    "Demote" as defined by the Standard Dictionary, means "to reduce in rank," to remove from one grade to a lower one.    But, if the word "demote" has a peculiar meaning, different from that which may be ascribed to any of the words quoted from the act, then can we not rightly conclude that no power is lodged in the Civil Service Commission or anywhere to demote a man, since the legislature, in this section, enumerated all the changes that were to be made in the grade or status of police officers.    A like conclusion results if "reduce" means "demote," and the act fails to provide for "demotion."

By section 13, the commission may adopt rules which shall have the force and effect of law.    By the rules adopted by this commission, we find that, "The commission shall have jurisdiction to investigate any removal

or reduction where it is alleged, with offer of proof, that the procedure required by this rule has not been followed, or that any of the provisions of the civil service article, or of these rules, have been violated."

There is nothing in the act inconsistent with this rule, and the Superior Court was of opinion, in Rush v. Phila., 62 Pa. Superior Ct. 80, 82, that while "there is no provision in the act providing for a trial before an employee may be discharged, it would seem that the only recourse left to the plaintiff was to the Civil Service Commission, which is charged with the duty of seeing that the above act is faithfully enforced. Under paragraph 3, of section 6, that commission has the right to make investigations, either sitting as a body or through a single commissioner, concerning all matters touching the enforcement and effect of the provisions of the act. Under section 20 of the act no one may be removed except for just cause." While this was considering the Act of 1906, a comparison of that act with the present one does not seem to change the law with respect to the matter now under discussion. The same reasoning applies to the first two paragraphs of section 18, of article XIX, now to be taken up.

It is not clear to me that a city employee may be summarily discharged for mere perfunctory "just cause," without an inquiry as to its fairness under the first paragraph of section 18. See Truitt v. Phila., 221 Pa. 331, 332; Rush v. Phila., supra; and the Civil Service Rules. The majority opinion says that, under this section, "a police officer or fireman is not entitled to an opportunity to be heard in his own defense" if he is reduced in pay or position, and, for the same reason, any other civil service employee may be discharged without a trial; but, if the word "reduce" means "demote," then, under the Civil Service Rule, above quoted, the officer may appeal to the commission. What is the purpose of the answer if he is not allowed to follow it up with a hearing? It is certainly a vain thing.

This same paragraph 1 of section 18 is broad enough to include every employee of the city, and, standing alone, would include policemen and firemen.   But the second paragraph of this section takes from this general and comprehensive group two lines of employees, "firemen and policemen," and places them in a class by themeslves. And, following our reasoning in Curran v. Phila., 264 Pa. 111, 115, 116, the two paragraphs, as they relate to policemen and firemen, are repugnant as affecting the particular question under consideration; the second paragraph must be held as embracing the legislative intent covering the particular offense before us.   And this thought seems to follow the general law as it related to Philadelphia before the Charter Act.   Policemen and firemen always had the right to trial before summary removal or demotion.

Let me at this point make my thought clear, that no misunderstanding may arise.   I believe it absolutely and essentially necessary, for the integrity of the police force of any municipality, that the chief police officer should have a liberal disciplinary control over his men; but it should be only a disciplinary control.   Especially should it not be a power that might be subverted to evil influences surrounding his office, or that could be made the tool of oppression either for personal or political ends. The police force is an integral part of the city life.   Its members are responsible to the people, and to the chief police officer as their representative.   The latter official causes the peoples' will to be executed by keeping a force of men up to a high standard of efficiency, so that crime may be suppressed and the peace of the inhabitants assured, as it relates to public order or violations of the law.   The policeman (officer or patrolman) who fills these requirements has a right that is more than a mere tenure of office,—a personal right to be kept in employment without being dishonored, and a property right to have his salary not unnecessarily reduced.   If he is to be subjected to the fear of demotion for disobedience of

orders or directions in matters purely outside his official duties, it does not take much imagination to see what will happen. A superior official, wishing to remove one for political or personal reasons, need only demote him, or, if under paragraph 1, section 18, assign a faked "just cause," knowing that the accused "would not have the opportunity to be heard in his own defense"; any answer he might submit would be futile. Under the majority opinion he would be, in effect, discharged; he would go. The exercise of this power becomes an instrument of great oppression, and calls for immediate legislative relief, if it be the law. If a captain may be demoted to a lieutenancy, why not to the position of an ordinary patrolman on some beat in an obscure section of the city? The exercise of this power is tantamount to depriving an officer not only of some of his rights, but all of them, virtually forcing him to separate himself from the police force. If a captain may be demoted without hearing or redress, see the inconsistency in the Charter Act, for, when dealing with suspension, "the commission shall have authority to investigate every such suspension and in case of its disapproval it shall have power to restore pay to the employee so suspended." But, according to the majority opinion, there is no authority, even in the courts, to redress the wrong of a captain demoted to a patrolman.

The act, as I see it, was not intended to, nor does it, create any such condition. In my judgment the majority opinion comes from a misconception of what the legislature meant when it used the words "removed or discharged." To remove a police officer means to change his rating in the department in which he is employed. That rating determines his status, (1st) as to compensation, and (2d) as to authority. When he is deprived of that status and given a lower one, it is a removal, whether it is a demotion, reduction, or whatever it is called; and it is in such instances the party may appeal to the authorities and the courts for redress. Of course

"removal" does not mean transfer from one district to another.

There is a sharp distinction between "removal," "discharge" and "suspension"; the last should be the chief disciplinary power exercised within reasonable and sane limits by the chief police officer of the city. The legislature did not intend the words "reduced in pay or position" to nullify the express provision which later followed, giving the right to a hearing in case of "removal or discharge" of policemen and firemen.

"Removal" does not necessarily mean "discharge," and the word should be construed in connection with the service to be regulated and the class of positions to which it was intended to apply: Stack v. O'Hara, 98 Pa. 213, 232; Waters v. City of N. Y., 88 N. Y. Supp. 238, 241; People v. Bd. of Education, 79 N. Y. Supp. 624, 627; Carey v. Bd. of Police, 53 N. J. L. 311, 313. There is a clear distinction between the use of the word "removal," in cases where it has been construed as synonymous with "discharge," as applied to elective or to appointive offices or positions; upon examination it will be found they relate solely to elective offices or appointive positions where the term is fixed by law and not to civil service appointive positions: Bonner v. Belsterling, 104 Tex. 432, 434; McKenzie v. Elliott, 77 N. J. Law 43; Harvard v. State, 72 Ark. 600. *In People v. Bd. of Education, 79 N. Y. Supp. 624, 627, it is unequivocally held a demotion from office is a removal within the terms of an act like our own.* Elected state, county or city officers are not discharged for wrongdoing; they are removed by impeachment, which operates as a complete severance from office. No one would think of speaking of such removals as a discharge, as, for instance, in the case of a senator, governor or President. If we decide "removed" means "discharged," we necessarily hold the legislature passed an act using two words with the same meaning. By proper interpretation we should construe the act so as to give effect, if possible,

to every word, and, in doing this, "removal" presumptively has a signification different from "discharge." (Especially is this the case when applied to policemen: Carey v. Bd. of Police, 53 N. J. Law 311, 313.) That removal does not contemplate severance follows logically from the holding of this court in Stack v. O'Hara, supra, where it was held a priest might be removed from a charge without separation from his priestly office. Every discharge comprehends a removal, but every removal does not comprehend a discharge; and none of the standard dictionaries recognize the words as synonymous.

It is a serious matter for a man to be removed or demoted from a captain to lieutenant. It constitutes a great change in life, and, in the army, could not be done without the approval of the President. The power to remove, in the case in hand, should be exercised only for the good of the police service and the well-being of the city. It involves many important considerations, and, because of the high character of an officer,—his long term of service, before reaching captaincy, making him a valuable public servant—merits a dignified treatment at the hands of those in authority, as the office is a responsible one. A man becomes captain only after long years of service, in this case since 1879. And the fact that faithful service has gotten for him the rank of captain entitles him to more than ordinary consideration; indeed the whole theory of the civil service law is to protect such individuals, and not to put them under the lash of politics, and it was supposed to enable them to act independently and efficiently. It would seem that his appeal to the court is a matter of right. But, if the power to demote makes him subject to the wish of every director or mayor who happens to be in power, it can be readily seen how severely the police administration will suffer. All that is necessary to do is to get this hold on the police captains, lieutenants and sergeants; you will not need to worry about what the patrolman is going to do politically,—a political machine can be made

that will be self-perpetuating, subject only to the will of the head of the city department, and no one can stop him. I cannot conceive it possible the legislature for a moment intended to put such great power into the hands of one individual; neither the director of public safety, the mayor, nor any person connected with the case ever thought it did until it reached this court and is now to be made the law.

I concur in that part of the majority opinion holding mandamus is the proper remedy and courts are empowered to inquire into any abuse of power by the commission. The evidence was admitted, not for the purpose of retrying the facts, but simply of laying before the court below the matters upon which the commission acted; and when we turn to that evidence to look for justification for the demotion or removal of this man, it is absolutely and wholly lacking in evidentiary value. There is not, in my judgment, a court in this Commonwealth that would permit a conviction of a man charged with any sort of an offense on evidence of a character such as was submitted in this case. This officer may have been guilty of dereliction of duty. His district may have been a bad one. We do not know; but he is entitled to a presumption of innocence until proven guilty. That was not done before the Civil Service Commission. The liberty of our citizens should not rest on such an insecure and unstable structure as success in political conflict, for the victor to-day may be the vanquished to-morrow, and the newly created police captain, raised from the ranks to-day, may to-morrow be the lone patrolman on some obscure beat. Surely this is not what the people of any community need, expect or desire; nor was it, as I conceive, what the legislature ever intended it to be. Nor is there sufficient warrant in the City Charter Act to make it so.

Even admitting everything the majority opinion says, the fact remains this man was demoted by the Civil Service Commission, and, under the law as announced

by the majority opinion, they have no power to demote. Their action is as follows: "And now, to wit, October 8, 1920, the Civil Service Commission finds the said David McCoach guilty......and sentence him to demotion to the rank of lieutenant, effective this date, with loss of pay since the date of his suspension, to wit: May 14, 1920." That the director carried out this sentence is beside the question. The sheriff carries out the sentence of the court when a man is convicted of an offense. But the power that puts him in jail is through the proceeding of the court, followed by the sentence of the judge. One would scarcely say that a prisoner was in jail because of the orders of the sheriff; and the power that demoted Captain McCoach was the Civil Service Commission, acting under the law,—it was not the director of public safety acting in his official capacity as a director.

I therefore disagree with my Brothers in their conclusion in this case, and would sustain the action of the court below.

See also the next case.