## Goldberg v. City of Philadelphia et al.

*Philadelphia Civil Service Commission—Power to discharge and suspend policemen and to modify decisions rendered—Act of June 25, 1919.*

1. Under section 18, article xix, of the Act of June 25, 1919, P. L. 581, 620, providing for "the better government of cities of the first class," the Civil Service Commission of Philadelphia has power to make an order of suspension, as distinguished from a complete discharge, of a police officer from the service; the word "remove," as used in the act, includes "suspend," although it does not connote or include "reduce" or "demote."

2. The commission may make an order of suspension by way of modification or amendment of a decision previously made by it discharging a police officer from the service.

Motion to quash writ of alternative mandamus. C. P. No. 2, Phila. Co., March T., 1923, No. 4470.

*Cornelius C. O'Brien*, for plaintiff.

*Marshall A. Coyne*, Assistant City Solicitor, and *David J. Smyth*, City Solicitor, for defendants.

STERN, J., May 7, 1923.—Arthur Goldberg, the plaintiff in the above cause, was appointed to the police force of the City of Philadelphia on Aug. 9, 1911, as a patrolman, and served in that capacity until July 8, 1922, when he was suspended by the Director of the Department of Public Safety. On July 25, 1922, he was brought to trial before the Civil Service Commission upon the charge of conduct unbecoming an officer, in that he was alleged to have been guilty of extortion. After hearing, he was found guilty by the Civil Service Commission and discharged from the police force on July 28, 1922. On Jan. 3, 1923, he petitioned the commission for a re-hearing and new trial in order to produce certain after-discovered evidence. Accordingly, a new trial was granted, additional testimony was taken, and on Jan. 10, 1923, the commission made the following order: "Sentence of dismissal modified. Suspended for six (6) months without pay, said suspension to date from July 28, 1922. To be restored to duty on Jan. 27, 1923."

On Jan. 27, 1923, the plaintiff reported for duty at the office of the Director of the Department of Public Safety, but that department refused to recognize the order of the Civil Service Commission of Jan. 10, 1923, as valid. Thereupon the plaintiff petitioned for, and was allowed, the present writ of alternative mandamus. The defendants have filed a motion to supersede or quash the writ, and it is this motion which is now before the court.

As the court views the case, there are two questions involved: (1) Has the Civil Service Commission the power to make an order of suspension as distinguished from a complete discharge from the service; that is to say, could the commission, even in the first instance, have made the order of suspension which it did make in the modifying order of Jan. 10, 1923? And (2) if it has such power, could it validly modify the original decision of July 28, 1922, and substitute the sentence of temporary suspension?

1. The so-called new City Charter contained in the Act of June 25, 1919, P. L. 581, provides, in section 18, that "No police officer . . . shall be removed or discharged, except for cause, upon written charges and after an opportunity to be heard in his own defence. . Such charges may be filed by any superior officer or by any citizen or taxpayer, and shall . . . be heard, investigated and determined by the commission. . . . The finding and decision of the commission . . . shall be certified to the appointing authority and shall be forthwith enforced by such authority. Nothing herein contained shall limit the power of any superior officer to suspend a subordinate for a reason-

able period, not exceeding thirty days, pending hearing and decision. Every such suspension shall be without pay: Provided, however, that the commission shall have authority to investigate every such suspension, and, in case of its disapproval, it shall have power to restore pay to the employee so suspended."

The act is certainly not happy in its phraseology. Under the provisions of the so-called Bullitt Bill of June 1, 1885, art. III, § 1, P. L. 37, 41, the police board, which was constituted by that act, was given the power to "authorize" the Director of the Department of Public Safety to impose fines, to suspend from pay or duty, or both, or to dismiss from the service, but the finding of the board was to be of no effect until approved by the mayor. Thus it will be seen that the action of that board was recommendatory only; it could not itself make decisions in the nature of the imposition of sentences. The present act seems entirely to depart from this system. While it merely provides that no police officer shall be removed or discharged except after an investigation by the commission (and in that way seems to give to the Civil Service Commission a kind of appellate jurisdiction over action proposed to be taken by the superior officer), yet, by the language employed in the latter part of the section above quoted, it seems inferentially to give to the commission the power itself to impose a sentence. This would appear to be so by reason of the fact that charges may be filed not only by the superior officer, but by any citizen or taxpayer, and, of course, the latter could not himself take any action by way of the imposition of a sentence. Moreover, the act provides that the finding and "decision" of the commission shall be certified to the appointing authority and shall forthwith be enforced by him. This interpretation is the one which in practice has been acted upon by the Civil Service Commission, which since its formation has constantly heard charges and imposed sentences by way of "decision."

The question then arises, what are the limits of the "decision" which the commission may make? Under the Bullitt Bill, as above pointed out, the commission could authorize the Director of the Department of Public Safety to impose various kinds of sentence, consisting of either fines, suspensions or dismissals. The present act makes no such express provisions, but it must be that there are limitations to the extent of the "decision," since the commission is certainly not a court of general penal or disciplinary jurisdiction. Upon reading the act with this inquiry in mind, we find that the finding and decision of the commission are to be made as the result of hearing written charges, filed either by the superior officer or by any citizen or taxpayer, and the provision in regard to these "written charges" is in connection with the statement that no police officer shall be "removed" or "discharged" except upon such written charges. It is, therefore, evident that the only charges which are to be investigated by the commission are those with respect to a proposed removal or discharge, and, therefore, it would seem logically and practically to follow that the result of a hearing of the charges by the commission can consist only of a removal or a discharge. That is to say, there is no provision or intimation in the act, as there was in the Bullitt Bill, that the commission is to have the right to inflict penalties by way, for example, of fines.

If, then, we arrive at the conclusion that all that the commission can do is to remove or discharge, we are met with the further question as to what is included within the meaning of those words. The case of McCoach *v.* Philadelphia, 273 Pa. 317, decided that the words "removed" or "discharged" do not include or signify "reduced" or "demoted." A temporary suspension, however, seems to be in a different category from a reduction or a demotion, and this for several reasons. In the first place, it would seem inconceivable that

3 D. & C.

the act intended to allow to the superior officer the right to suspend a subordinate police officer without the power of investigation by the Civil Service Commission; if this were not so, it would mean that a police officer might be suspended for any period, amounting even to a number of years, and thus, for all practical purposes, be completely removed from the service without review of such action by the commission—a conclusion which would make the civil service feature of the act entirely nugatory. In the second place, it is to be presumed that the two words, "removed" and "discharged," would not both have been used if there was not intended to be some shade of difference in their respective meanings, and while "discharged" can fairly mean only a complete separation from the service, "removed" may well be construed to be a word of less force and to include a partial or temporary, as well as a complete or permanent removal. In the third place, the clause that "nothing herein contained shall limit the power of any superior officer to suspend a subordinate for a reasonable period, not exceeding thirty days, pending hearing and decision," would have been unnecessary had the framers of the act not believed that, in the absence of such clause, the superior officer would have had no right to suspend a subordinate for a temporary period, and yet the loss of that right could have resulted only from its inferred inclusion in the word "removed." We thus arrive at the conclusion that, although, as held in McCoach v. Philadelphia, 273 Pa. 317, the word "removed" does not connote or include "reduced" or "demoted," it does include "suspend," which is a *pro tanto* or partial removal. The result of such conclusion is that under the present act a police officer cannot be suspended by the superior officer (except to the extent expressly provided in the limiting clause above quoted) without a hearing and review by the Civil Service Commission, and, as a correlative of this proposition, that the commission may in its "decision" itself suspend a police officer, charges against whom have been investigated and heard by it.

2. Assuming, then, that the Civil Service Commission could, in the first instance, have suspended the plaintiff for six months, can it make such an order by way of modification or amendment of a decision previously made by it discharging the plaintiff from the service?

It is believed that the answer to this question is contained in the case of Gallagher v. Blankenburg, 248 Pa. 394, where it was held that the police court provided for in the Bullitt Bill might reopen a case, grant a new trial, and as a result come to a different conclusion than that originally adopted by it. The Supreme Court in that case said: "The right of a trial court to correct its errors or to grant a new trial when the just administration of the law requires this to be done, is an inherent power of such a tribunal. In the case at bar, the functions of the trial court were judicial in character, and its judgment in a case properly brought before it for trial must be regarded as that of a court of competent jurisdiction. That such a court, in the absence of any statutory restriction or limitation, has the power to grant a new trial cannot be successfully controverted. The right of a court to order a new trial of its own motion is indisputable."

It is true that in Gallagher v. Blankenburg the decision concerned itself, as above stated, with the operation of the police board, but it is impossible to see how a different viewpoint can exist with reference to the Civil Service Commission operating under the present act. If the police board was a judicial body, certainly the Civil Service Commission is also a judicial body, its functions being the same as those of the police board—a view all the more strengthened by reason of the fact that at least one of the members of the commission hearing the case must be learned in the law. It is also true that

the point decided in the Gallagher v. Blankenburg case was that the police board could grant, or, of its own motion, institute, a new trial, and could reverse the judgment of conviction previously rendered by it; whereas, in the present case, the commission has not reversed its finding of guilt, but has merely altered the decision or sentence previously imposed by it. This difference, however, apparently does not amount to a distinction. A judicial tribunal has as much inherent right to correct an error by way of a change in its sentence as by a change in its basic finding of guilt or innocence, for both are included in its "decision," and certainly an unjust and erroneous sentence may be as effectively harmful as an unjust or erroneous finding of guilt.

It is argued that there must be at least some limit in time in which the commission can reverse its decision, but there seems to be no such limitation provided in the statute. The nearest approach to it is in article ix, section 13, paragraph 6, which seems by inference to allow reinstatements within one year of persons who, without fault or delinquency on their part, have resigned or have been separated from the service. But that clause is not applicable, since it refers only to persons separated from the service without fault or delinquency on their part, which is not the present case; neither is the present case one of reinstatement at all, being merely a modification of an erroneous or unjust decision previously rendered by the commission. That some reasonable time must exist beyond which the commission cannot change its findings or decisions may be conceded, just as the criminal courts, for example, have, as the result of custom now hardened into law, no power to change a sentence after the expiration of the term in which it was rendered: Com. v. Mayloy, 57 Pa. 291. It is unnecessary, however, to decide in the present proceedings the exact limit of time in which the power exists. In the Gallagher v. Blankenburg case the Supreme Court sustained a reversal of previous findings made about four months after the original decision; in the present case the period that elapsed was about five and one-half months, and the difference certainly is not sufficiently great to warrant the court in stating that the line should be drawn between the period elapsed in the Gallagher v. Blankenburg and the present case.

The court, therefore, concludes that the order of the Civil Service Commission of Jan. 10, 1923, was valid, and accordingly overrules the defendants' motion to supersede or quash the writ of alternative mandamus.