## Leary v. Moore, Mayor, et al.

*Cities of the first class—Civil service law—Demotion of police officers—Act of June 25, 1919.*

1. In cities of the first class the power to reduce police officers in pay or rank is vested in the Director of Public Safety.

2. Such power must be exercised in accordance with the provisions of the 1st paragraph of section 18, article xix, of the Act of June 25, 1919, P. L. 581, but the reduction in rank becomes effective without a hearing by the Civil Service Commission.

Petition for alternative mandamus. C. P. No. 5, Phila. Co., June T., 1923, No. 2883.

*Owen J. Roberts*, for plaintiff.

*David J. Smyth*, City Solicitor, for defendants.

Upon presentation of a petition, a writ of alternative mandamus issued requiring respondents to show cause why petitioner should not be reinstated as a lieutenant of police in the City of Philadelphia, from which office he was demoted to patrolman by the Director of Public Safety. The return to the writ by James T. Cortelyou, Director of Public Safety, presents for determination the question whether the Director of Public Safety or the Civil Service Commission is vested with the power to regulate demotion.

A replication was filed joining issue on the facts set forth in the answer, and a stipulation was filed agreeing that the case be tried by the court without a jury.

### Findings of fact.

1. The City of Philadelphia is a city of the first class; respondent, J. Hampton Moore, is Mayor, and respondent, James T. Cortelyou, Director of Public Safety. The city is governed by the Act of June 25, 1919, P. L. 581.

2. Article v, section 3 of the act provides that: "The Department of Public Safety shall have the care, management, administration and supervision of the police affairs and all matters relating to the fire and police forces."

3. Article xix, section 5, provides for the establishment of a civil service commission.

4. On June 14, 1922, William T. Leary, the petitioner, who occupied the office of a lieutenant of police, was demoted by the Director of Public Safety without any written notice, or charges preferred, and reduced from the rank of lieutenant of police to patrolman. On July 24, 1922, the Director restored him to the rank of lieutenant, but notified him in writing of charges against him which warranted demotion from the office of lieutenant to the position of patrolman, and specified "neglect of duty, general unsatisfactory condition of the 20th Police District, covering vice and gambling, and particularly failure to report or take action against certain individuals who operated a gambling-house in the Ludlow Building, No. 34 South 16th Street, which place was raided and arrests made on June 1, 1922." Petitioner was notified that he would be allowed to furnish to the Director within five days such written answer as he might desire to make.

On July 28th petitioner sent a reply to the Director acknowledging the receipt of his letter, and complaining that the reasons given for his demotion were indefinite and uncertain; responsibility for failure to suppress the gambling establishment was denied, and attention called to proceedings of the Civil Service Commission in which his subordinates were exonerated for

failure to discover that gambling had been carried on in the place specified in the Director's letter. The petitioner protested against his demotion and demanded a hearing on the charges by a person or body authorized to hear and determine the matter.

On Aug. 1, 1922, the Director ordered petitioner demoted from the rank of lieutenant of police to patrolman for neglect of duty, and on Nov. 4, 1922, he was suspended, pending investigation. On Dec. 28, 1922, he was ordered by the Director to report in uniform as a patrolman for duty. He refused to obey this order, and on March 31, 1923, a charge of absence without leave was preferred against him by the Director of Public Safety. This case was heard by the Civil Service Commission on April 10, 1923, and on May 4, 1923, the commission rendered a decision finding petitioner not guilty of the charges, and directed that he be restored to duty as a lieutenant of police. The Director of Public Safety refused to restore him to the rank of lieutenant, and on May 7, 1923, again ordered him to report as a patrolman, which order he again refused to obey.

*Discussion.*

The questions for decision are, first, has the Civil Service Commission or the Director of Public Safety the power to demote police officers in the City of Philadelphia? and, second, was the acquittal of petitioner by the Civil Service Commission, when charged with neglect of duty in failing to report as a patrolman after being reduced to the ranks, binding on the Director?

The powers of the Civil Service Commission are statutory and limited by the Act of June 25, 1919, P. L. 581. The second paragraph of section 18 of article XIX of the act provides that: "Police officers and firemen shall not be removed nor discharged except for cause, upon written charges and after an opportunity to be heard in their own defence, and that such charges shall be heard and investigated and determined by the commission or by some one duly authorized by it." There is no provision in the act conferring upon the Civil Service Commission jurisdiction to hear or determine any matter relating to the demotion of a police officer.

In McCoach *v.* Philadelphia, 273 Pa. 317, it was said: "Unless restrained by statute, a city of the first class may promote, demote or discharge a policeman at will, under the rule that the power which appoints may remove."

After quoting the provision of the act that no police officer or fireman, except those dismissed during the probationary period, are to be removed or discharged except for cause, upon written charges and after an opportunity to be heard in defence, the opinion continues: "It will be noted this does not relate to reduction in pay or position, but only to cases of removal or discharge, and, therefore, in the former instances, a police officer or fireman is not entitled to 'an opportunity to be heard in his own defence.' It follows that as appellee was reduced and not removed, or discharged, it is wholly immaterial what evidence was taken before the Civil Service Commission or in the court below; the matter was one for the appointing power alone, where, as here, there was a just cause stated, not religious or political, a written statement thereof given to the policeman and he allowed to give a written answer thereto. . . . The use of the words 'removed or discharged' does not signify that either means 'reduced.' It is our duty to construe the law as written and that of the legislature to make or modify it."

The requirement that in case of removal or reduction, a copy of the statement of the reasons thereof and of the written answer shall be furnished to the Civil Service Commission and entered upon its public records, confers upon the Civil Service Commission the duty of keeping a public record of the

demotion, but nothing more. There is no authority conferred upon the commission to reduce in pay or position, and, in the absence of the authority vested elsewhere, it rests with the appointing officer under general law, subject to the limitations that it be for just cause, not religious or political, accompanied by a written statement of the reasons and opportunity offered for a written answer.

The cause set forth in the written notice from the Director of Public Safety to petitioner of neglect of duty and failure to abate the gambling-house was sufficient and just cause for demotion, and petitioner was not entitled to a hearing upon the charge. The conclusion of the Civil Service Commission that subordinates of petitioner were guiltless of the same charge cannot control this case. It might well be that the superior could be justly charged with neglect of duty not chargeable to subordinates, and petitioner was not a party to that proceeding. The hearing by the commission on the subsequent charge of absence without leave was unauthorized; that proceeding did not involve either the discharge or removal of petitioner.

The rights of petitioner must be determined by the principles declared in McCoach v. Philadelphia, 273 Pa. 317, where it was held: "No law seems to prevent the demotion of a policeman without formal proceedings before the Civil Service Commission. Unless sustained by statute, the city may promote, demote or discharge a policeman at will, under the rule that the party which appoints may remove." In the argument presented in the present case on behalf of petitioner, the court is asked to regard the opinion in that case, in so far as it refers to demotion, as "dicta;" but it was declared in the construction of the same provisions of this act of assembly now under consideration and is binding upon this court.

The law as now declared is that the demotion of a policeman for just cause is within the power of the Director of Public Safety, and the Civil Service Commission has no authority with respect to demotion.

The prayer of the petitioner for reinstatement as a lieutenant of police must be refused.

### Conclusions of law.

1. The power to reduce police officers in pay or rank is vested in the Director of Public Safety.

2. Such power must be exercised in accordance with the provisions of the first paragraph of section 18 of article XIX of the Act of June 25, 1919, P. L. 581, but it becomes effective without a hearing.

3. The order of the Director of Public Safety of the City of Philadelphia of Aug. 1, 1922, reducing the petitioner from the rank of a lieutenant to patrolman, was a valid exercise of power, made pursuant to proper notice and for just cause.

4. The order of the Civil Service Commission of May 4, 1923, directing the restoration of the petitioner to the rank of lieutenant of police, was illegal and unauthorized and not binding upon the Director of Public Safety.

5. Petitioner to pay the costs.

And now, to wit, Dec. 7, 1923, the prayer of the petitioner for a writ of mandamus is refused.

By the Court.    MARTIN, P. J.