## Witkin v. City of Philadelphia

*Emanuel Romm* and *Adda Lutz Ferguson*, for plaintiff.

*Thomas B. K. Ringe*, assistant city solicitor, for defendant.

GLASS, J., October 28, 1932.—This is an action in assumpsit by the plaintiff, David Witkin, a police officer of the City of Philadelphia, against the City of Philadelphia, to recover the sum of $540, representing ninety days' pay, with interest thereon from August 1, 1930; the said pay representing a ninety-days' fine imposed upon him by the director of public safety of the said city.

This case involves the right of the latter to impose such a fine. The case was tried by the writer, sitting without a jury. The uncontradicted testimony and the pleadings disclose the following facts: that the plaintiff entered the employ of the City of Philadelphia as a police officer on November 11, 1920, and is still so employed; that, on or about February 15, 1930, he was charged with neglect of duty and was called for a hearing before a police board of investigation, composed of three inspectors of police in the Bureau of Police, Department of Public Safety; that after the hearing, which the plaintiff attended, the said board recommended to the director of public safety the imposition of a fine, and that the latter, on February 16, 1930, imposed a fine upon the plaintiff of ninety days' pay, with duty, and 120 hours of extra duty; that the plaintiff continued to perform services as a police officer, but at each succeeding semi-monthly pay certain sums were deducted therefrom until the entire sum of $540 was deducted; and that the fine imposed was in accordance with a schedule of fines laid down in rules and regulations promulgated by the director of public safety.

At the trial the plaintiff offered in evidence the Act of June 25, 1919, P. L. 581, popularly known as the Charter Act, and particularly section eighteen of article nineteen thereof. It was agreed by counsel at the trial of the case that the only question of law at issue is the right of the director of public safety to impose a fine upon a police officer; and, further, that if the court finds that he has that power, the fine imposed was proper. The trial judge found that no power or authority is vested in the director of public safety to impose a fine and that the plaintiff was entitled to recover from the city the fine imposed upon him, to wit, $540, with interest from August 1, 1930, $70.33, or a total of $610.53, in which amount the finding was made. Counsel for the City of Philadelphia, having requested a finding in his favor, now moves the court for judgment for the defendant notwithstanding the finding.

As there are no issues of fact involved, and in view of the agreement of counsel that the only question to be determined was the right of the then director of public safety to impose the fine, we shall confine our discussion solely to the question of law raised: Has the director of public safety the power to fine a police officer?

The office of director of public safety is created by statute, and the rights, duties and powers conferred upon the director result from and are controlled by legislative enactment. At the time of the imposition of the fine, the director of public safety derived his power from the Charter Act of June 25, 1919, P. L. 581, entitled "An act for the better government of cities of the first class of this Commonwealth," which was then in force and which, by article five thereof, provided for a department of public safety and conferred certain powers upon the director and prescribed certain duties. Nowhere in said article is there any mention of or reference made to the right or power of the director to impose fines. It is, therefore, reasonable to assume that had the legislature intended to confer such power upon him it would have expressed it in clear and unequivocal language. Nor can we assume that such power is conferred by article nineteen (designated Civil Service) of said act, particularly section eighteen thereof, to which reference will be made later.

The right of a director of public safety to impose a fine was, with certain qualifications, vested in him under the old Bullitt Bill (Act of June 1, 1885, P. L. 37, Art. III, Sec. 1), which provided for a court of trial or inquiry composed of members of the police force equal or superior in rank to the officer on trial to conduct the trial of offenders, and gave to the director of public safety the power to impose fines, to suspend from duty, without pay, or to dismiss from

the service. The finding of the board, however, was subject to approval by the mayor, the following language being used:

"And its [the trial board's] decision may authorize the director of the department of public safety to impose fines and pecuniary penalties, to be stopped from pay, or to suspend from pay or duty, or both, for a period fixed by them not exceeding one year, or to dismiss from the service. . . .

"It shall be lawful for the director of the department of public safety at his discretion, to suspend from duty before trial any person charged as aforesaid, until such trial can be had, with or without pay as such court shall afterward determine, but no trial shall be delayed for more than one month after charge made.

"The finding of the court of trial or inquiry as aforesaid, shall be of no effect until approved by the mayor."

The said act was reënacted by the Act of March 19, 1906, P. L. 94, 95.

Prior to the Charter Act of 1919 the right of the director of public safety to fine under certain conditions was decided in the case of Casper v. Philadelphia, 55 Pa. Superior Ct. 266, 269 (1913), wherein Henderson, J., speaking of the Act of June 1, 1885, P. L. 37, commonly known as the Bullitt Bill, with reference to section one of article three thereof, relative to the dismissal of policemen and firemen and the provision for their trial, etc., said:

"This was intended to be a complete provision for the maintenance of the efficiency of the police force so far as the conduct of the members of that body is concerned and protects such officers from arbitrary control by the mayor or the director of the department. It was the apparent purpose of the legislation to give security of position to policemen and protect them from political and other influences which might impair the efficiency of the force and thus operate to the prejudice of the public welfare. Section twenty of the Act of March 5, 1906, P. L. 83, emphasizes this intention in the provision that 'Nothing in this act shall alter the procedure required for the removal or punishment of policemen and firemen as provided in article three, section one, of the Act of June 1, 1885, relating to the government of cities of the first class.' These provisions of the law show clearly that the method of removing a policeman for misbehavior in office is by specific charges made by the director of the department or delivered to him, which charges are to be tried by a court composed of 'persons belonging to the police or fire force equal or superior in official position therein to the accused,' and it is the decision of this court which may authorize the director to fine, suspend or dismiss. That this is a subject of legislative regulation is well shown in Com. v. Black, 201 Pa. 433, and Koester v. Philadelphia, 46 Pa. Superior Ct. 110."

But the Act of June 1, 1885, P. L. 37, 41, as reënacted by the Act of March 19, 1906, P. L. 94, 95, was superseded by the more elaborate Act of June 25, 1919, P. L. 581, entitled "An act for the better government of cities of the first class of this Commonwealth," which, in addition to expressly repealing the Act of 1885 (reënacted by the Act of 1906 above referred to), repeals also the Act of March 5, 1906, P. L. 83. By its terms, the Charter Act abolished the trial board provided for under the Bullitt Bill and lodged the powers theretofore granted to it in the Civil Service Commission. It contemplated the transfer of the duties to the commission previously imposed upon the police trial board: Goldberg v. Philadelphia et al., 279 Pa. 356, 359 (1924); by providing in section one of article nineteen thereof:

"From and after the effective date of this article, all appointments, transfers, reinstatements, promotions, reductions, suspensions, removals, and dis-

missals, in the civil service of such city, shall be made in accordance with the terms and provisions of this article and the rules prescribed thereunder."

"This clearly leaves the Act of 1919 as the sole guide in matters like the present, in cities of the first class:" McCoach v. Philadelphia, 273 Pa. 317, 320 (1922).

There is nothing in article nineteen (Civil Service), which is the all-embracing law concerning civil service employes, which confers any authority upon the director of public safety to impose fines. Reference is made in several sections of that article to persons in the classified service, including policemen in that category; but nowhere is there any mention made of the right to fine. By section sixteen thereof it is provided that:

"No person in the classified service, or seeking admission thereto, shall be appointed, promoted, suspended, reduced, or removed, or in any way favored or discriminated against, because of his political or religious opinions or affiliations. No inquiry in any application, examination, or investigation shall relate to the religious or political affiliations of any person."

And by section eighteen thereof:

"No officer, clerk, or employe in the classified civil service of such city shall be removed, discharged, or reduced in pay or position, except for just cause, which shall not be religious or political. Further, no such officer, clerk, or employe shall be removed, discharged, or reduced, except during the probationary period, until he shall have been furnished with a written statement of the reasons for such action, and been allowed to give the removing officer such written answer as the person sought to be removed may desire. In every case of such removal or reduction, a copy of the statement of the reasons therefor and of the written answer thereto shall be furnished to the civil service commission, and entered upon its public records.

"No police officer or fireman, except those dismissed during probationary period, shall be removed or discharged, except for cause, upon written charges, and after an opportunity to be heard in his own defense. Such charges may be filed by any superior officer or by any citizen or taxpayer, and shall, within thirty days after filing, be heard, investigated, and determined by the commission or by one of the commissioners or by some person or board appointed by the commission to hear, investigate, and determine the same. Where one person is appointed by the commission to hear such charges, he shall be a person learned in the law. Where a board is appointed to hear such charges, at least one member of such board shall be learned in the law. The hearing shall be public, and the accused and his counsel shall have the right to be heard.

"The finding and decision of the commission or commissioner or of such person or board, when approved by the commission, shall be certified to the appointing authority, and shall be forthwith enforced by such authority.

"Nothing herein contained shall limit the power of any superior officer to suspend a subordinate for a reasonable period, not exceeding thirty days, pending hearing and decision. Every such suspension shall be without pay: Provided, however, That the commission shall have authority to investigate every such suspension, and, in case of its disapproval, it shall have power to restore pay to the employe so suspended.

"All papers filed in any hearing under this section shall be public records of the commission."

It is quite apparent that there is nothing in the act which provides for fining a police officer. Counsel for the city contends that the power to fine is vested in the director of public safety, and bases his contention upon the decision in the case of McCoach v. Philadelphia, supra. Counsel contends that a fine is, in

effect, a reduction in pay, and that the director, having the right to reduce in rank—and it following that the pay would necessarily also be reduced—therefore has the right to impose a fine. With that contention we cannot agree. In the first place, no such construction can be placed upon the decision of the court in the McCoach case, wherein the court held that the power to demote remained in the director of public safety. Secondly, a fine is not a reduction in pay. It is defined in 25 C. J. 1148 and in 2 Bouvier's Law Dictionary, page 1225: 'Pecuniary punishment imposed by a lawful tribunal upon a person convicted of crime or misdemeanor." In the instant case, the word "fine" is used in the sense of pecuniary punishment.

There was no reduction in pay in the instant case. The rate of pay of the plaintiff was $6 per day, and it was the same before and after the imposition of the fine, which was ordered in the following language: "Fine loss of ninety days' pay." Therefore, it cannot be logically argued that there was a reduction in the pay of the plaintiff. The director of public safety, therefore, was without power and had no authority to impose the fine in question. The only authority vested in him by the provisions of the section above referred to is the right to suspend without pay for a period not exceeding thirty days. But, however, it authorizes the Civil Service Commission to investigate such suspension, and in case of its disapproval, to restore pay to the employe so suspended. The discretionary power vested in the director of suspending with or without pay, under the Bullitt Bill, is removed by the Charter Act of 1919, which makes the suspension for thirty days without pay mandatory.

After a careful consideration of the record in the case and the law, we find that the trial judge committed no error in his finding, and, therefore, dismiss the motion for judgment for the defendant notwithstanding the finding.