Osterheldt, Appellant, *v.* City of Philadelphia.

Argued October 25, 1933. Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Thomas I. Guerin,* for appellant.

*Thomas B. K. Ringe,* and with him *James Hall Prothero* and *Ernest Lowengrund,* Assistant City Solicitors and *David J. Smyth,* City Solicitor, for appellee.

Opinion by Cunningham, J., March 3, 1934:

Harry Osterheldt, plaintiff below and appellant herein, brought suit against the City of Philadelphia for salary alleged to be due him as a detective in the bureau of police of the department of public safety for the year beginning December 31, 1930, and ending December 31, 1931. The case was tried before Rosen,

10

J., sitting without a jury; the finding was in favor of the city and this appeal is from the judgment entered thereon.

Under the practically uncontroverted facts appearing from the record before us, the City of Philadelphia was clearly entitled to a judgment in its favor and this appeal is without merit.

The material facts are these: Appellant was employed as a patrolman in 1905 and on January 1, 1929, was promoted to detective of the first grade; if legally entitled to salary as a detective for the year in question the amount thereof would be $2,400.

On December 23, 1930, appellant was suspended for conduct unbecoming an officer and intoxication; his salary had then been paid to December 31st of that year. He turned in his badge and effects and was ordered to, and did, appear before the police board of investigation on January 16, 1931. Under date of January 23, 1931, he received from the director of public safety the following notice of "intended demotion:"

"You are hereby notified of the following charges against you which will warrant your demotion on January 29, 1931, from the position of Detective, Bureau of Police, salary $2400 per year, to the position of Patrolman, Bureau of Police, salary $6.00 per day:

Conduct Unbecoming An Officer.

"In that while operating your automobile north on 11th Street, when above Pine Street you collided with a motorcycle operated by one John J. O'Neill, injuring him, and instead of stopping and rendering aid, you left him on the highway and abandoned your automobile.

This on December 23, 1930.

Intoxication.

"In that after you had collided with a motorcycle while operating your automobile and had abandoned

your automobile, you came into the 19th District Police Station, upon being ordered to do so, where you were examined by the District Surgeon who pronounced you as being in an intoxicated condition.

This on December 23, 1930.

"You are hereby further notified of your right under the law to furnish the Director of Public Safety, within five days from the date of this notice of intended demotion with such written reply to the above charges as you may desire to make, and you are requested to furnish the director with such reply, in duplicate."

As a result of the hearing before the police board of investigation, appellant was restored to duty, fined, transferred to another district, and detailed by the superintendent of police to street duty, in uniform; he received the following notice, also under date of January 23, 1931, of this action.

"You are hereby restored to duty as of midnight this date Jan. 23, 1931, and transferred to the 27th District for duty on street in uniform—effective at midnight this date Jan. 23, 1931—You are not to be given any plain clothes assignments at any time. You have been fined the loss of 300 days' pay, 500 hours extra duty, case No. 19250 heard Jan. 16, 1931, for conduct unbecoming an officer and intoxication—The fine to include time lost during suspension, suspended 12-23-30."

The next day appellant reported to the captain of the 27th district. His own account of what occurred reads: "On the 24th I went to Tacony and reported to Weiss for duty, one hour before time, and I said to him, 'I have been ordered here into your district for duty.' He said, 'Yes, I have an order to that effect.' I said, 'Will you mind reading that order?' He said, 'Yes.' Then he read the order. ......
After he read that order I said to him, 'Well, it is

a pretty strong order.' He said, 'Yes.' Then I said, 'Well, I don't think I would like to work one year for nothing and do five hundred hours extra. I will go home and wait for further orders.' I told him that I wouldn't go to work under those conditions, at the present.''

The only variation in the testimony of the captain, relative to this interview, is that he stated appellant did not tell him "he would go home and wait for further orders." Appellant did not avail himself of his right to furnish the director of public safety with a reply to the above charges.

Under date of January 29, 1931, the director gave appellant notice of demotion, the material portions of which read:

"Not having received a reply to my notification of your intended demotion, ...... I hereby demote you from the position of detective, Bureau of Police, salary $2,400 per year, to the position of patrolman, Bureau of Police, salary $6 per day.''

Several notices were given appellant in September, 1931, to report to the assistant superintendent of police; that official testified: "On September 17, 1931, patrolman Osterheldt came into my office and I asked why he hadn't reported for duty at the 27th Police District as of January 23d. He said the Captain had read the decision made by the Director in his case, that he was ordered to pay a fine of three hundred days and do five hundred extra hours duty, and that he said he refused to do that, and wouldn't go to work under that decision. I asked him if he would now go to work, and he said no, he wouldn't go to work under the decision of the director.''

Appellant's version of the interview did not differ materially from that of the assistant superintendent. During the period from December 31, 1930, to December 31, 1931, appellant was not paid any salary, either

as a detective or as a patrolman, because, as stated by his superior officer, "he didn't work" and was carried on the roll as "absent without leave," through "disobedience to orders and never reporting for work."

Under date of December 31, 1931, the director of public safety sent appellant the following letter:

"City Council in the Budget for 1932 has made certain reductions in the personnel of the Department of Public Safety.

"It has become necessary to dispense with the services of some members of the department due to these cuts.

"This letter is to inform you that your services will no longer be required after midnight December 31, 1931. Inasmuch as there will be no appropriation from which you can be paid after that date, you need not report for duty thereafter.

"Please be advised that this is an honorable discharge and that you are being dropped from the rolls of the department because of curtailment in the personnel."

Appellant instituted no proceedings questioning the reasonableness of the fine, nor was that question raised below; we therefore assume it was authorized by the schedule of fines promulgated by the director. His principal contention is that under Sections 16 and 18 of Article XIX of the Act of June 25, 1919, P. L. 581, 619, (the so-called City Charter Act) the director of public safety had no power to fine or demote him without the authorization of the civil service commission, obtained by referring the charges against him to that commission for trial. This contention cannot be sustained. The authority of the director of public safety to demote and to fine employes of the bureau of police for just cause, without referring the

matter to the civil service commission, has been fully established by recent appellate decisions.

In McCoach v. Philadelphia, 273 Pa. 317, 117 A. 71, the Supreme Court held that the director of public safety has power to demote a police officer, but may not remove or discharge him, without referring his case to the civil service commission. Then, in Witkin v. City of Philadelphia, 110 Pa. Superior Ct. 489, 168 A. 491, (in which an allocatur was refused by the Supreme Court) we held that the director may impose a fine, in accordance with the rules and regulations prescribed for the government of the department, without any proceedings before, or authorization by, the commission. We need not here repeat the reasoning upon which those decisions were based. There is no suggestion in this case of discrimination of any sort upon political or religious grounds; there was just cause for fining and demoting appellant, and by his refusal to comply with the orders of his superiors and perform the duties assigned him he clearly deprived himself of any right to salary for the year in question.

Judgment affirmed.