## Commonwealth ex rel., Appellant, v. Black.

*Constitutional law—Removal of public officers—Policemen.*

Policemen are petty officers or subordinate ministerial agents or employees, and as such are not included in section 4, of article 6 of the constitution of Pennsylvania which provides that "Appointed officers other than judges of the courts of record, and the superintendent of public instruction may be removed at the pleasure of the power by which they shall have been appointed."

*Public officers—Policemen—Removal—Act of May 23, 1889, P. L. 299, section 4, article 7.*

Before section 4 of article 7 of the Act of May 23, 1889, P. L. 299, was amended by the Act of May 16, 1901, P. L. 237, section 20, the mayor of a city of the third class could not remove a policeman without the advice and consent of the select council.

Argued Oct. 26, 1900. Reargued Nov. 7, 1901. Appeal, No. 129, Oct. T., 1900, by plaintiff, from order of C. P. No. 2,

Allegheny Co., July T., 1900, No. 500, dismissing petition for mandamus in case of Commonwealth ex rel. John C. Haymaker, District Attorney of Allegheny County, v. R. J. Black, Mayor, and Patrick Morrisey, Chief of Police of City of McKeesport. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Petition for mandamus.

From the record it appeared that the petition was filed to compel the defendants to place the names of certain persons on the roll of police officers of the city of McKeesport; to recognize the said parties as members of the police force of said city; and to detail them for duty as such.

The defendants filed an answer denying the right to the relief claimed in the petition, and averring that the policemen named had been properly dismissed by the mayor. The petitioner demurred to the answer.

The court in an opinion by Frazer, J., sustained the demurrer and dismissed the petition.

*Error assigned* was the order of the court.

*L. S. Stentz*, with him *T. C. Jones* and *W. A. Challener*, for appellant.—Policemen in cities of the third class are not public officers within the meaning of section 4 of article 6 of the constitution of Pennsylvania: Saul v. Scranton, 9 Pa. Dist. Rep. 156; Com. v. Stokley, 20 W. N. C. 315; Russell v. Williamsport, 9 Pa. C. C. Reps. 129; Gift v. Allentown, 37 Legal Int. 332.

*E. P. Douglass*, for appellees.—The mayor had the power of removal: Lane v. Com., 103 Pa 481; Com. v. Evans, 74 Pa. 124; Thomas v. Poor District, 4 C. P. 155; Russell v. Williamsport, 9 Pa. C. C. Rep. 129; Com. ex rel. v. Lynch, 8 Pa. Dist. Rep. 347; Com. v. Rutherford, 8 Pa. Dist. Rep. 349.

Opinion by Mr. Justice Mitchell, January 6, 1902:

Since the decision of this case by the learned court below, the whole substance of the litigation has been taken out of it by the repeal of the statute under which it arose. It is there-

fore unnecessary for us to discuss at much length the result at which we have arrived.

Section 4 of article 7 of the Act of May 23, 1889, P. L. 299, for the government of cities of the third class, provided that the "council shall fix by ordinance the number, rank and compensation of the members of the city police force, and prescribe all necessary rules and regulations for the organization and government thereof. . . . The mayor shall nominate, and by and with the advice and consent of the select council appoint, suspend or dismiss the said policemen, any or all of them, and in like manner all vacancies shall be filled."

The first question that arises is the construction of this section with reference to the mayor's power as to the removal of a policeman once duly appointed and confirmed. Notwithstanding the opinion of the learned judge below, and the argument here, the language of the act is too clear to admit of any but one construction. The mayor "shall nominate," that is his individual act not needing the concurrence or subject to the control of other authority. Then he shall "by and with the advice and consent of the select council, appoint, suspend or dismiss." All of the steps with reference to the assumption of office and the removal, temporary or permanent, from it, are classed together and alike required to be with the advice and consent of the select council. There is no difference in this regard, between appointment and suspension or removal, and we could not make a distinction without contravening the plain language of the legislature and its manifest intent.

It is argued that as the general purpose of the act is to charge the mayor with the responsibility of maintaining the peace and security of the city through the police, it is necessary that he should have such control over its individual members as will enable him to enforce discipline and be served by those in harmony with him. The learned judge below was much influenced by this view. But on the other hand it is undeniable that much of the best recent thought devoted to municipal government tends to the elimination of politics and personal influences from consideration and the establishment as far as practicable of a tenure of good behavior for all subordinate and non-political positions. The subject was earnestly and exhaustively discussed in the first congress and subsequently. See

Story on the Constitution, sec. 1537, et seq., and Ex parte Hennen, 13 Peters (U. S.), 231. In practice it has become established that removal is an executive function and may be exercised without the necessity of legislative concurrence. But it is equally well settled that apart from constitutional restrictions, the legislature which creates an office may control the mode of filling or vacating it. Therefore the arguments to which we have referred, are for legislative and not for judicial consideration.

There remains the question of constitutionality. Section 4 of article 6 provides that " appointed officers other than judges of the courts of record, and the superintendent of public instruction may be removed at the pleasure of the power by which they shall have been appointed."

The fullest discussion of this provision that has been had so far is to be found in Houseman v. Com. ex rel. Tener, 100 Pa. 222, and Lane v. Com., 103 Pa. 481, in which it was held that the constitution made no distinction in regard to the power and mode of removal, between state, county and municipal officers. But these cases give us very little light on the present question, as both the offices there concerned were beyond dispute important public offices within the provision. In the former case GREEN, J., said " there are petty state officers and petty county officers and it may well be that it was not intended that any of these should be either subject to impeachment or to removal on address of two thirds of the senate. But that consideration will not prove that an important municipal officer exercising grave public functions shall not be subject to removal at the pleasure of the power which appointed him." The status of a policeman with reference to this subject has been before the courts of common pleas in a number of cases and the opinions are pretty evenly divided. Without going into the discussion at length, we are of opinion that a policeman is a subordinate ministerial agent or employee, like a fireman, a watchman or superintendent of public squares or other property, under the orders of a municipal department. He is not an independent " municipal officer exercising grave public functions " in the language of Houseman v. Com., supra, but at most a petty officer not intended to be included in the constitutional provision and therefore subject as to appointment and removal to legislative regulation.

As already said the statute under which this contest arose has been repealed. By the Act of May 16, 1901, sec. 20, P. L. 237, section 4 of article 7 of the act of 1889, has been amended so that it now reads, "the mayor shall nominate and by and with the advice and consent of the select council appoint said policemen, and at his pleasure dismiss any or all of them." This terminates all future rights of the parties in whose behalf this petition was filed, to reinstatement, and of course prevents the issue of the mandamus for that purpose. But as there may be other rights or consequences involved, besides costs, the decree is reversed pro forma, and the record is remitted to the court below for such further order or proceedings as may be proper to give effect to this decision.