Opinion by
Head, J.,
The Act of May 23, 1907, P. L. 206, is in pari materia with the Act of March 5, 1906, P. L. 83, the former applying to cities of the second class, the latter to cities of the first class. We may therefore with propriety apply to the later act the language of Mr. Justice Mestrezat in Truitt v. Philadelphia, 221 Pa. 331, where the earlier civil service act was under consideration, viz.: “The act was manifestly intended to make full provision for the appointment and discharge of officers and employees in the civil service of the city, and to definitely prescribe the manner of exercising such authority, as well as to protect faithful and efficient appointees against removal for a *528 political, religious or other insufficient cause.” In the same opinion it was further said: “The purpose of the legislature in passing the act was, as its title shows, ‘to regulate and improve the civil service of the cities’ to which it applies, and thereby obtain for the city faithful and efficient employees and protect them from removal for religious or political reasons.”
The act provides for the appointment of a civil service commission as the operative instrumentality to work out and put in practice the beneficent purposes of the statute. To that end such commission is empowered to, inter alia, “prescribe, amend and enforce rules and regulations for carrying into effect the provisions of this act.” If the object sought by the legislature in the enactment of the statute now under consideration was a wise one — and this we may not question — it would be singular if it excluded from its beneficence so large and important a class of a city’s servants as its policemen and firemen. Their occupation is at best of a hazardous nature. On them we largely depend for that security of fife and property without which the primary purpose of government would be lost. If then it was the intention of the legislature to secure for its cities of the second class faithful and efficient employees, it is hard to believe that policemen and firemen were' intended to be excluded from the operation of the act.
There is nothing in the language of the statute describing the scope of its operations which would exclude either policemen or firemen. The first clause of the twelfth section of the act in terms provides that “the superintendent of police and detectives and the chief of the fire department” shall be included in what is known as the exempt class. But we need not pursue this fine of reasoning farther because it is admitted by the able counsel for the appellants that the act is applicable to both policemen and firemen in so far as their appointment is concerned. But it is urged upon us that the civil service commission is not concerned in nor responsible for even the *529 improper dismissal or discharge of a policeman or fireman and has no jurisdiction concerning such question.
It would seem here pertinent to remark that the legislature would have accomplished but little had it stopped with merely providing a means for appointing, in the first instance, qualified persons to fill the various positions and offices within the scope of the act, and had done nothing to secure their tenure of office when so appointed. Unless then it is made to appear from the language of the statute itself that, as to this important branch.of the city’s service, the civil service commission was to have no control, it ought to follow that its functions should be actively exercised in preventing the improper dismissal or discharge of a policeman or fireman just as in other cases. It is argued, however, that such control is taken away because of the following proviso in the twentieth section of the act of 1907, viz.: “Nothing in this act shall alter the procedure required for the removal or punishment of policemen and firemen, as provided in the act of March seventh, one thousand nine hundred and one, relating to the government of cities of the second class.” Now had the statute defined in terms a procedure to be followed where it was proposed to punish or dismiss a policeman or fireman, could it be successfully argued that the broad control over both “the appointment and discharge” of employees in the civil service vested in the commission, had thereby been taken away? We think not. No different result should follow merely from the fact that the legislature, instead of defining anew the procedure in such cases, accomplished the same end by the bodily adoption of a provision of an earlier act. Such provision is to be read into the adopting act and construed as part of it and then interpreted in the light of all of the enactments of the statute. The causes that would warrant the statutory court in punishing or removing a policeman or fireman would be those recognized by the act of 1907. Hence it might follow that a sentence of removal that could be sustained under the act of 1901, would be unlawful under *530 the act of 1907, because it rested on a cause which the later act declared to be neither legal nor sufficient.
The statute provides for the creation of a pension fund to which such employees contribute, and it would certainly be a great hardship if, after years of faithful service, they might be discharged without such trial as is guaranteed to them by the law and could not appeal to some such nonpartisan body as the statute creates, to supervise the record of such trial and see whether or not the alleged cause of dismissal was within those contemplated by the statute.
In the present case the civil service commission, upon an examination of the record of the trial of the appellee before the tribunal created by the act of 1901 and adopted by the act of 1907, determined that the appellee had been deprived of some of the rights secured to him by the statute in such cases. It consequently declared that such trial was void and of no effect and directed that he be tried anew. This was accordingly done, and of the results of that trial, conducted according to law, no one can complain. But during the period that had elapsed between the two trials, the appellee was deprived of any opportunity to perform his duties as a member of the police force and refused the salary which would have been attached to such performance. When the commission set aside the first trial the officer applied to city councils to appropriate a sum sufficient to pay him for the time during which it appeared he had been improperly deprived of his office. The city councils, in their wisdom, concluded that under the circumstances he should be paid and passed a resolution appropriating the necessary money. The mayor and controller, however, being of opinion this amounted to an illegal appropriation of the public money, refused to issue and countersign the necessary warrant and the application for a mandamus followed. The learned court below in a careful opinion reached the conclusion that the civil service commission had acted within its powers in setting aside the trial conducted under the act of 1901 already *531 referred to and ordered that a peremptory mandamus issue. From that order this appeal is taken.
For the reasons already indicated, as well as those filed by the court below, we are of opinion the conclusion reached was the correct one.
One other consideration may here be pertinent. Stating the case of the appellant in its most favorable light, we think it cannot be denied the question presented to city councils was one of the settlement and payment of a doubtful claim. In such cases an honest individual might prefer to pay rather than incur the costs and expenses of possible or probable adverse litigation. There would seem to be no good reason why city councils could not honestly reach the same conclusion. If they did, there being no allegation that the result was brought about by corruption, bad faith, or other undue means, there is force in the proposition that their determination to pay the bill ought to be final. Under such circumstances there is little in this case to distinguish it from the principles that were held controlling in Bailey v. Philadelphia, 167 Pa. 569, and Justice v. Philadelphia, 37 Pa. Superior Ct. 267. In the former case Mr. Justice Mitchell said: “Councils it is true are trustees and the law limits their expenditure of public money to public purposes, but they are also representatives of their constituents, and delegates of the city’s legislative powers, and there is nothing in the law or in sound public policy to prohibit the city from being honest, and paying its bona fide debts which are good in conscience and justice, though for sufficient other reasons, there is a general rule which prevents them from being enforceable by law.”
We are not to be understood as saying that the situation of the appellee here was precisely that of the school teacher in the case referred to, but the mere fact that he was charged with a serious abuse of his official power does not prevent the operation of the presumption of his innocence until that had been overthrown by a trial which accorded to him the rights guaranteed to him by the law. *532 If the city councils were honestly of opinion that he was probably in a position to enforce a claim against the city for his services during the period already referred to, it would seem, under the doctrine of the cases cited, that they might honestly agree to pay him without awaiting the result of litigation, and in such event their determination ought to be final.
When the city councils had in fact appropriated the money to pay the appellee’s claim and its officers refused to issue the necessary warrant, we have no doubt of the jurisdiction of the court in a proceeding for a mandamus. Had the plaintiff brought an action at law and had the city been persuaded of the justice of his claim, it is difficult to understand why the councils would not have been authorized to permit a judgment to go against the city. In such event the appellee would be precisely where he is ■ now, and the aid of the court must then have been invoked to overcome the opposition of the present appellants. We conclude therefore that the present record discloses no reversible error and the order of the court directing the issue of a peremptory writ of mandamus is affirmed.