## Bolay v. Philadelphia.

*M. J. McEnery*, for plaintiff.

*H. Eugene Heine*, Assistant City Solicitor, for defendant.

GLASS, J., January 26, 1931.—This is a suit brought by the plaintiff, a patrolman of the City of Philadelphia, against the said city, for the recovery of salary during the period of his suspension from duty. It was tried by a judge without a jury, and resulted in a finding for the plaintiff in the sum of $1801.10, covering the entire period of his suspension, to wit, from Novem-

ber 1, 1928, to the date of his restoration to duty, September 4, 1929. The finding of the trial judge was based upon the following material facts:

The plaintiff, Warren S. Bolay, a police officer of the City of Philadelphia since his appointment on July 12, 1911, was suspended on November 1, 1928, by the Director of Public Safety for "conduct unbecoming an officer, in that he had been arrested on the charges of bribery, extortion and conspiracy in connection with a lottery game, as a result of which he was held in $2500 bail for court at a hearing before Judge Edwin O. Lewis, sitting as a committing magistrate." The plaintiff received a copy of the specifications of the charges preferred against him by the Civil Service Commission on November 20, 1928, and was notified to appear before it for trial on November 23, 1928. He appeared before the said commission on that date, and because of the unpreparedness of the assistant district attorney in charge of the prosecution of the case, a request for a postponement was made and granted, after the plaintiff had signed a typewritten paper designated as a "waiver," partly in blank, addressed to the Civil Service Trial Board, requesting a postponement of the hearing and decision of the case. In this alleged waiver, the plaintiff agreed to waive his right to claim pay as a patrolman between the time of his suspension, November 1, 1928, and the date of the disposition of his case before the said trial board.

The hearing was continued from time to time until it was finally heard on May 16 and 17, 1929, at which time the plaintiff was present, he having appeared on all other days that had been fixed for trial.

On June 19, 1929, the Civil Service Commission forwarded the following communication to the Director of Public Safety:

"The Civil Service Commission, after hearing held on May 16, 1929, finds Patrolman Warren S. Bolay, Tenth District, to be not guilty of conduct unbecoming an officer, Case No. 2938.

"We direct that he be restored to duty as of this date, and that he receive his pay during his suspension from duty."

The plaintiff, after receiving the notice from the Civil Service Commission of its finding, reported for duty on September 1, 1929, and began to work on September 4, 1929. He did not receive any pay from November 1, 1928, until September 1, 1929. The plaintiff at no time intended to waive any of his legal rights, including his right to receive pay during suspension; all he intended by the alleged waiver, the contents of which were unfamiliar to him, was merely a postponement of the trial of his case; and if he had known that he was waiving any rights, he would not have signed it; and he was ready to go to trial on the first day that his case was called; the plaintiff was always ready and willing to report for duty; he did not engage in any other business or occupation during the time of his suspension; and during that time he was frequently called upon, from time to time, to appear in court as a witness in cases in which he had made arrests while performing his duty as a patrolman.

The ordinances of council of 1927 and 1928 fixed the salary of patrolmen of the grade to which the plaintiff belonged at $5.50 per day; and an ordinance of council approved November 15, 1855, section eleven, provides that:

"No policeman shall be permitted to engage in any other business or profession whatsoever, and he or they so offending shall upon due proof thereof be at once discharged from the service, and shall not be eligible for reappointment for one year thereafter;"

and the Manual of Rules and Regulations of the Department of Public Safety, section three of article three, provides, inter alia:

"The time and energy of the members of the force belong to the City, and they are expressly prohibited from pursuing any occupation."

The plaintiff's name appeared on the records of the Bureau of Police as a member of the Philadelphia police force for 1928 and 1929; and a patrolman is deprived of the power of arrest during the period of his suspension, but is subject to the call and demand of the Bureau of Police for his services at any time. The plaintiff refused to accept in full payment of the salary due him the sum of $583, which represented 106 days' pay at $5.50 a day, covering the period from June 19, 1929, to September 3, 1929, and also thirty days of the suspension period which had been ordered paid to him by the Director of Public Safety.

The question involved is whether the Director of Public Safety may withhold the salary of a patrolman during the entire period of his suspension under charges of which he is subsequently acquitted by the Civil Service Commission, which salary was ordered paid by the commission; the patrolman being during the entire time of his suspension ready and willing to perform his prescribed duties, and during the further period from the time the commission ordered him restored to duty until the time when the said director complied with the order of the said commission.

Counsel for the defendant, in his motion for a new trial filed on behalf of the city, contends, firstly, that the superior officer may suspend only for thirty days, and, therefore, the Civil Service Commission may only restore pay for thirty days; secondly, that, since the superior officer may only suspend for a period of thirty days, at the end of thirty days the plaintiff ceased to be suspended; thirdly, that by continuing the case the commission suspended the plaintiff for a period greater than thirty days, which it had no right to do; and, fourthly, that the alleged waiver signed by the plaintiff should have operated as an estoppel, and prevented him from a recovery in this case.

On the other hand, it is contended by counsel for the plaintiff that he is entitled to his salary during the entire period of his suspension; that his right of recovery depends on the extent of the jurisdiction of the Civil Service Commission, which, in turn, depends on the provisions of the Act of Assembly of June 25, 1919, P. L. 581, which is known as the Charter Act; and that the said commission also has the power to restore pay to suspended police officers. The said act provides, *inter alia*, in article nineteen, section eighteen:

"No police officer or fireman, except those dismissed during probationary period, shall be removed or discharged, except for cause, upon written charges, and after an opportunity to be heard in his own defense. Such charges may be filed by any superior officer or by any citizen or taxpayer, and shall, within thirty days after filing, be heard, investigated, and determined by the commission or by one of the commissioners, or by some person or board appointed by the commission to hear, investigate, and determine the same."

And paragraph four reads:

"Nothing herein contained shall limit the power of any superior officer to suspend a subordinate for a reasonable period, not exceeding thirty days, pending hearing and decision. Every such suspension shall be without pay: Provided, however, That the commission shall have authority to investigate every such suspension, and, in case of its disapproval, it shall have power to restore pay to the employee so suspended."

A careful reading of the above leads us to the conclusion that its provisions make it mandatory for a hearing and determination of a case against any policeman to be had within thirty days, and authorizes the said commission

to investigate any suspension without pay, and, in case of its disapproval, empowers it to restore pay to the employee so suspended. Article nineteen of the aforesaid act is remedial in its nature, and, as such, must be liberally construed so as to secure the result intended by the legislature. In Com. v. Lowe Coal Co., 296 Pa. 359, Mr. Chief Justice Moschzisker says (page 367): "A 'primary rule of construction . . . is that, in applying a statute, the first duty of the court is to ascertain and give effect to the intention of the legislature' (Vonot v. Hudson Coal Co., 285 Pa. 385, 392-93), and, when 'necessary . . . to effectuate a plain legislative intent, . . . additional . . . words [may be] interpolated:' Catlin v. Pickett & Co., 262 Pa. 351, 354."

In 36 Cyc. 1174, speaking of remedial statutes, it is said: "In construing such statutes, regard should be had to the former law, the defects or evils to be cured or abolished, and the remedy provided; and they should be interpreted liberally so as to promote the object of the legislature by suppressing the mischiefs and advancing the remedy."

Prior to the Charter Act of 1919 we had the Act of March 5, 1906, P. L. 83, known as the Civil Service Act of 1906, and the Act of June 1, 1885, P. L. 37, to which reference is made by Mr. Justice Walling in the case of McCoach v. Philadelphia, 273 Pa. 317, at page 319, as follows: ". . . Unless restrained by statute, a city may promote, demote or discharge a policeman at will, under the rule that the power which appoints may remove; but section 1 of article III of the Act of June 1, 1885 (P. L. 37, 41), known as 'The Bullitt Bill,' protected policemen and firemen from dismissal, except by the decision of a court of inquiry, created and acting as therein provided; this was reënacted by the Act of 1906, P. L. 94, 95 (which became a law because not returned by the governor within thirty days after the adjournment of the legislature), but was superseded by the more elaborate Act of June 25, 1919, P. L. 581, entitled 'An Act for the better government of cities of the first class of this Commonwealth,' which, in addition to expressly repealing the Act of 1885 (reënacted by the Act of 1906, above referred to), repealed also the Act of March 5, 1906, P. L. 83, relied on by the court below, and provides in section 1 of article XIX (Act of 1919, P. L. 613), that 'From and after the effective date of this article, all appointments, transfers, reinstatements, promotions, reductions, suspensions, removals and dismissals, in the civil service of such city, shall be made in accordance with the terms and provisions of this article and the rules prescribed thereunder.' This clearly leaves the Act of 1919 as the sole guide in matters like the present, in cities of the first class."

The clear intent and purpose of the Charter Act of 1919 was to protect the policemen and firemen in their pay. It empowered the superior officer to suspend without pay for a period of thirty days, and, as already referred to, empowered the Civil Service Commission to inquire into suspensions without pay. If it had been the intention of the legislature to give the Director of Public Safety control over patrolmen's pay, it would have used language for that purpose. If the Civil Service Commission is vested only with the power of restoring pay for thirty days of suspension, it would follow that the Director of Public Safety, by prolonging the suspension, might deprive a patrolman of his pay indefinitely. There is only one conclusion to which we must come, and that is that the Civil Service Commission has the power to restore the pay lost during suspension. There can be no doubt that the office of a policeman in the City of Philadelphia is subject to legislative regulation and control. That question has been decided in the case of Com. v. Black, 201 Pa. 433, which holds that the office of policeman in the City of Philadelphia is

subject to legislative regulation and control, and, therefore, no policeman can be suspended or dismissed in any manner other than the method provided by the act of assembly. That act of assembly is the Act of June 25, 1919, P. L. 581, and is now the sole guide in matters of this kind in cities of the first class: McCoach v. Philadelphia, 273 Pa. 317.

From the foregoing, it follows that the defendant's first point is not tenable. The Charter Act gives the superior officer power to suspend without pay, pending hearing and decision, but not for a period longer than thirty days. The obvious meaning of that is that if the subordinate has a hearing and a decision is rendered within thirty days, his suspension ceases; but if he does not, the superior officer must order him restored to duty. While the act empowers the Civil Service Commission to restore pay in the case of suspension without pay for a thirty-day period, it places no limit on the commission's power to restore pay for a greater length of time.

In considering the question of the restoration of pay, it is necessary to determine what the powers of the commission are, and what effect their orders have. In Crofut v. Philadelphia, 2 D. & C. 459, the court held that the decision of the Civil Service Commission, sitting as a trial court, upon charges against a fireman or policeman, is final, and its findings cannot be inquired into by the court unless the commission acted without taking any evidence whatever, the court using this language:

"In the case now before us, the petitioner being a policeman, the determination of this matter is vested in the Civil Service Commission, sitting as a trial court. The principle, however, is the same, and it follows that we cannot inquire into the correctness of the findings of the Civil Service Commission. . . . The decision of the Civil Service Commission is a judicial finding. . . . In Gallagher v. Blankenburg, 248 Pa. 394, it was held: 'The procedure provided in the Act (Bullitt Bill) must be followed, and the decision of the trial court as to the guilt or innocence of the accused officer is final, unless reversed or set aside by a court of competent jurisdiction having the power of review upon appeal or certiorari."

This decision was affirmed in 276 Pa. 366. See, also, Goldberg v. Philadelphia, 279 Pa. 356, in which case the Supreme Court upheld the commission's right to reopen and rehear a case, and to change the order of dismissal to one of suspension for six months.

As to the second point raised by the city, little need be said. The objection made is entirely without merit. To say that Patrolman Bolay, the plaintiff, was not suspended after the expiration of thirty days from the filing of the specifications of complaint against him, is fallacious. He was suspended, and he was awaiting the orders from his superior officer to return to duty. As defined in the case of Koester v. Philadelphia, 46 Pa. Superior Ct. 110, 111: "Suspension is, actually, awaiting orders." In that case the court further says:

"The officer is still liable to be called on to perform duty and is still a policeman. According to the ordinance of November 15, 1855, he could not engage in any other business without forfeiting his position. Regulation 3, Sec. 3, of the rules of the police department also expressly prohibits the officers from pursuing any other occupation."

That language can aptly be used in the instant case. Bolay testified without contradiction that he held himself in readiness to respond to a call from his superior, and he did not engage in any other business or occupation because by law and regulation he was prohibited from doing so. Had he

attempted to engage in any other business or occupation during any period of his suspension, he would have subjected himself to a charge of disobedience. As later events showed, he reported for duty immediately when requested to do so.

Counsel for the city also argued that the plaintiff should have reported for duty after December 1, 1928. As above indicated, he was under suspension, and under no obligation to report unless ordered to do so by his superior. To have done so would have been in vain. No person can be expected or called upon to do that which is vain and useless.

Thirdly: We can dismiss this contention of the city without discussion. The facts do not warrant the city in taking the position that by continuing the case, the commission suspended the plaintiff for a period greater than thirty days, which it had no right to do. There is nothing in the testimony to indicate that the commission suspended the plaintiff. He had already been suspended by the Director of the Department of Public Safety. His case came up for hearing by the commission, who, pursuant to law, found him not guilty of the charges preferred against him, and ordered him restored to duty with pay during his suspension. That it had the power and authority to do so by legislative enactment is beyond question. Its findings are conclusive, and must be accepted. See Crofut v. City of Philadelphia, supra.

Lastly, as to the alleged waiver, it may well be that on grounds of public safety, there could have been no legal waiver by the plaintiff of his salary: Bosler v. Rheem, 72 Pa. 54; 27 R. C. L. 907. But, without passing upon that, we find that the trial judge determined as a matter both of fact and of law that the paper alleged to be a waiver was not a waiver, and with that conclusion we concur. According to the generally accepted definition, a waiver is the intentional relinquishment of a known right: 27 R. C. L. 904, § 2.

"What one does in a dilemma forced upon him by the default of another, cannot be counted upon as a waiver:" 40 Cyc. 259. "Whether there has been a waiver is generally a question of fact, and the sufficiency of the evidence relating thereto is for the jury:" 27 R. C. L. 912, § 7. "Waiver is a matter of fact to be shown by the evidence:" 40 Cyc. 267. "The question of waiver is mainly a question of intention, which lies at the foundation of the doctrine. Waiver must be manifested in some unequivocal manner, and to operate as such, it must in all cases be intentional. There can be no waiver unless so intended:" 40 Cyc. 261, 262. "An intention to make the waiver should clearly be made to appear by the evidence, and the best evidence of intention is to be found in the language used by the parties:" 40 Cyc. 262, 263.

The evidence in the instant case clearly shows that the plaintiff never intended to waive any right or relinquish any claim that he had. That was found as a fact by the trial judge, who was the trier of the facts, and we cannot substitute our judgment for that of the trial judge: White v. Sixteenth and Locust Realty Co., 80 Pa. Superior Ct. 49, 52. Whichever view is accepted, the conclusion is the same—that is, that the plaintiff did not waive his right to his salary or emoluments of the office of patrolman to which he was entitled, and from which he was kept by the action of the Director of the Department of Public Safety.

It may well be said that the city, in contending that the plaintiff waived his right to pay, is collaterally attacking the judgment of the Civil Service Commission. It is an attempt, in a proceeding collateral to the one in which the judgment was entered, to attack the validity of the judgment on grounds which are other than jurisdictional. That the doctrine of collateral attack applies to the decisions of quasi-judicial bodies, such as the Civil Service

Commission, is well settled. The following language is found in 34 C. J. 519-20:

"The rule against collateral impeachment of judicial decisions applies to the determinations of state and county officers or boards of officers, who, although not constituting a court, are called upon to act judicially in matters of administration, such as boards of county commissioners, . . . police boards."

The decree or order of the Civil Service Commission was not appealed from; it is, therefore, final and binding, and no attack can be made upon it in a collateral proceeding.

It is folly for the city to contend that because the plaintiff should have been restored to duty after thirty days, and was not so restored, he is not entitled to the salary or emoluments attached to the office of patrolman of the City of Philadelphia. He was prevented from performing the duties of that office through no fault on his part, but because of the action of his superior officer. If there was any fault, it was that of the superior officer. The plaintiff was entitled to the salary of that office. His name appeared upon the rolls of the Bureau of Police for the years 1928 and 1929, an appropriation was made for his salary, and he was entitled to receive the same during the period that he was illegally deprived thereof: Storm *v.* City of Scranton, 77 Pa. Superior Ct. 283; Doverspike *v.* Magee, 51 Pa. Superior Ct. 525; Koester *v.* Philadelphia, *supra.*

After careful consideration of the case, the court *in banc,* finding that the trial judge committed no error in his rulings or in his finding, dismisses the defendant's motion for a new trial.