## Vega v. Burgettstown

*Richard DiSalle*, for plaintiff.

*Edward V. Sciamanna*, for defendant.

WEINER, J., February 10, 1958.—This matter comes before the court at this time upon a case stated wherein it is agreed that plaintiff was dismissed from his position as chief of police for defendant borough on Febru-

ary 15, 1954, that from this dismissal plaintiff appealed to this court, the proceedings being filed at no. 314, May term, 1954. It is further agreed that the said appeal was sustained, and that defendant borough was ordered to reinstate the said plaintiff as chief of police at the expiration of the 60-day suspension fixed by the court, to wit, April 16, 1954, and that the said plaintiff was to be paid from that date until the date of his reinstatement.

It is further agreed in the case stated, that while plaintiff offered to return to his position as chief of police, the said borough instead appealed to our Supreme Court from the decision of this court, and by its opinion filed November 14, 1955, the said order of this court was affirmed, that following the opinion of the Supreme Court plaintiff was reinstated to his position as chief of police of defendant borough on November 28, 1955, that based upon his former compensation of $300 a month, there was due plaintiff for the period between April 16, 1954, and November 28, 1955, the total sum of $5,850.

It is further agreed that during the same period, plaintiff obtained other employment and earned a total of $5,608.56, that defendant borough did not pay the said plaintiff the said total lost pay as chief of police amounting to $5,850, but instead paid him the difference between that amount and the amount of his gross earnings of $5,608.56 plus an amount for travel and miscellaneous expenses, less court costs, totaling the sum of $909.14.

The issue therefore before the court is whether defendant borough is entitled by law to deduct and set off the amount of plaintiff's earnings during the period of suspension from the amount which he would have earned as chief of police. If it is, then judgment is to be entered in favor of defendant. If it is not, then judgment is to be entered in favor of plaintiff and

against defendant in the amount of $5,608.56 with interest from November 28, 1955.

The controversy in this case apparently results from the contention of plaintiff, but disputed by defendant, that as a chief of police, he is entitled to be considered as a public officer and therefore entitled to the full amount of his back pay without any set off or deduction for his admitted earnings during his period of suspension. In support of that contention, plaintiff claims that he is a public officer by virtue of his title as chief of police, the duties of that office, and the fact that in some acts of assembly, a chief of police is referred to as an officer. With this contention the court cannot agree. While it is true that a chief of police may be referred to in some acts of assembly as an "officer", yet in the opinion of this court, he is not a public officer within the meaning of the laws of Pennsylvania. He exercises no public functions, his duties are purely ministerial, whether those duties are fixed by law or determined by his immediate superior, who in this case, involving a borough, would be the burgess: Lesniakowski v. Caruso, no. 2, February term, 1955, reported in 35 Wash. Co. 260. And while he may have been designated as chief of police, yet he is still a policeman within the contemplation of the Act of June 15, 1951, P. L. 586, under which his right of tenure and his claim to back pay is based: Commonwealth ex rel. v. Black, 201 Pa. 433.

In the case of Seltzer v. Reading, 151 Pa. Superior Ct. 226, is found the general rules applicable to the issue involved, holding that a public officer, unlawfully removed, is entitled to his full salary, without deduction of the amount of wages earned in other employment during that same period. It holds that salary is payable to a public officer, not as a contractual obligation but as an incident of his office as long as he holds it. A public officer is defined as an officer of a municipality

exercising public functions. It distinguished employes from public officers, holding that an employe is but a ministerial agent as distinguished from an officer exercising grave public functions. See also Commonwealth ex rel. v. Black, supra.

That same case of Seltzer v. Reading holds that an employe's acceptance of appointment results in a contract of employment, and when such a contract of hiring has been violated and one has been unlawfully discharged from employment, his earnings elsewhere during the period are to be set off against his recovery or right of recovery for the wages or salary lost and that the statutory clause, providing that such employes "shall be reinstated with full pay" does not affect the right to set off the income earned elsewhere by the employe during the period of his unlawful discharge.

That all policemen, including those designated as chiefs of police, are considered employes has been consistently held. In Donahue v. Philadelphia, 157 Pa. Superior Ct. 125, a case involving a police officer, the court said that the city and plaintiff stood in relation of employer and employe. Commonwealth ex rel. v. Black, supra, holds that all policemen are employes, and this case has been repeatedly cited and followed: Ruch v. Wilhelm, 352 Pa. 586. Where the duties of the office are to be exercised for the benefit of the public, for a stipulated compensation to be paid by the public, where the term is definite and the tenure certain, and where the powers, duties and emoluments become vested in a successor when the office becomes vacant, the occupant of such office is a public officer. On the other hand, it is recognized that some officers, although they have some public duties to perform, are not to be considered public officers, when their work, in the main, is of a ministerial nature. These have been termed petty officers or employes, and our appellate courts have specifically placed policemen in that classification.

Our courts have early recognized the right of set-off. As early as 1862 we find the case of King & Graham v. Steiren, 44 Pa. 99, wherein the court stated the proposition as follows:

"An employee for a determinate period, if improperly dismissed before the term of service has expired, is *prima facie* entitled to recover the stipulated compensation for the whole time. If the plaintiff was engaged in other profitable employment during the term, or such employment was offered to him and refused, the defendant, upon whom is the burden of proof, may show it, in mitigation of damages." (Syllabi.)

The Pennsylvania courts have uniformly followed this principle, which was also adopted in the Restatement of the Law of Contracts, §336, subsec. 1.

The legislature, by the Act of 1951, sec. 4, did not mean to change this principle when it provided that a person removed or suspended and then reinstated was entitled to full pay. This is indicated by the case of Coble v. Metal Township School District, 178 Pa. Superior Ct. 301, dealing with the Teachers Tenure Acts, containing this same provision as to full pay after reinstatement. That case nevertheless holds that the same right of set off still applied. Justice and equity compels us to hold that no public employe should ever be unjustly enriched at the expense of any municipality.

The fact that the legislature by this Act of 1951 provided for the payment of full pay upon reinstatement, is a significant indication that the legislature considered a policeman, chief or otherwise, as an employe, and not as a public officer, unlawfully removed, would be entitled to such back pay without the force of any statute: Seltzer v. Reading, supra.

Nor does the fact that defendant borough elected to appeal from the decision of this court on the issue of the right of this plaintiff to his reinstatement, affect

the right of defendant to set off his admitted earnings against his lost pay. To hold otherwise would result in penalizing the borough for doing that which they had a legal right to do, and could be considered as a denial of justice and of the due process of law to which this borough and any litigant is and should be entitled.

After a consideration of the admitted facts set forth in the case stated, and the laws of this State applicable thereto, and in justice to the parties hereto, as well as in good conscience, the court is constrained to find in favor of defendant borough.

Wherefore the following

*Order*

And now, February 10, 1958, it is hereby ordered, adjudged and decreed that judgment should be and is hereby entered in favor of defendant.