

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-16-1996

# Pievsky v. Ridge

Precedential or Non-Precedential:

Docket 96-7206

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Pievsky v. Ridge" (1996). *1996 Decisions.* Paper 48.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/48

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 96-7206


MAX PIEVSKY,
                    Appellant

v.

THOMAS J. RIDGE, in his capacity as the
Governor of the Commonwealth of Pennsylvania


On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 96-cv-00116)


Argued July 17, 1996
BEFORE:  SLOVITER, Chief Judge, COWEN and ROTH
Circuit Judges

(Filed October 16, 1996)

Richard A. Sprague (argued)
Geoffrey C. Jarvis
Peter Konolige
Sprague & Sprague
135 South 19th Street
Wellington Building, Suite 400
Philadelphia, PA  19103

    COUNSEL FOR APPELLANT

Stephanie A. Middleton
Paul A. Tufano (argued)
Office of Attorney General of
 Pennsylvania
Office of General Counsel
333 Market Street
17th Floor
Harrisburg, PA  17108

    COUNSEL FOR APPELLEE

OPINION

COWEN, Circuit Judge.


Former Commissioner of the Delaware River Port Authority of Pennsylvania and New Jersey ("DRPA"), Max Pievsky, filed a complaint challenging the Governor of Pennsylvania's power to remove him without cause under the terms of the DRPA Compact, an interstate agreement between the Commonwealth of Pennsylvania and the State of New Jersey. The district court dismissed the complaint on summary judgment, concluding that the Governor of Pennsylvania had the power to remove DRPA Commissioners prior to the expiration of their terms. Because we agree that, under the terms of the DRPA Compact, the Governor of Pennsylvania has the power to remove the appointed DRPA Commissioners at will, we will affirm the April 12, 1996 order of the district court.

I.

Jurisdiction of the district court was invoked pursuant to 28 U.S.C. §§ 1331 and 1441(b). The construction of an interstate compact approved by Congress presents a federal question under 28 U.S.C. § 1331. See Petty v. Tennessee–Missouri Bridge Comm'n, 359 U.S. 275, 278, 79 S. Ct. 785, 788 (1959). We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291.

Our review of the district court's interpretation of the interstate compact is plenary. Peters v. Delaware River Port Auth., 16 F.3d 1346, 1349 (3d Cir.), cert. denied, 115 S. Ct. 62 (1994).


II.

The parties stipulated to the following facts. The DRPA derives its authority from the DRPA Compact, an interstate agreement between the Commonwealth of Pennsylvania and the State of New Jersey. The Compact was originally enacted by the Pennsylvania and New Jersey legislatures in 1931 and is codified in reciprocal statutes at Pa. Stat. Ann. tit. 36, § 3503 (1995) and N.J. Stat. Ann. §§ 32:3–1 to 3–18 (West 1995). As required by the Compact Clause of the United States Constitution, U.S. Const. art. I, § 10, cl. 3, Congress originally consented to the terms of the Compact in 1932 and thereafter consented to amendments in 1952 and 1992.

The DRPA was created, among other things, to construct and operate bridges across the Delaware River, to construct and maintain facilities for the transportation of passengers between Pennsylvania and New Jersey, and to improve and develop the ports of Philadelphia and Camden. DRPA Compact, Article I, 36 P.S. § 3503. The DRPA has sixteen commissioners, eight of whom are appointed from Pennsylvania and eight of whom are appointed from New Jersey. The Compact establishes the procedure for the appointment of the eight commissioners from Pennsylvania as follows:

> [s]ix of the eight commissioners for the Commonwealth of
> Pennsylvania shall be appointed by the Governor of

Pennsylvania for terms of five years.  The Auditor General and the State Treasurer of said Commonwealth shall, ex-officio, be commissioners for said Commonwealth, each having the privilege of appointing a representative to serve in his place at any meeting of the commission which he does not attend personally.

All commissioners shall continue to hold office after the expiration of the terms for which they are appointed or elected until their respective successors are appointed and qualify, but no period during which any commissioner shall hold over shall be deemed to be an extension of his term of office for the purpose of computing the date on which his successor's terms expires.

DRPA Compact, Article II, 36 P.S. § 3503.  Article II of the Compact states that the New Jersey appointees must be confirmed by the Senate of New Jersey, but does not require legislative confirmation of Pennsylvania's appointees.

The states have significant control over the DRPA.  The Compact provides that the Board may act only by way of a majority of each state's commissioners voting in favor of the action.  In 1992, the state legislatures amended the Compact to allow each state to pass legislation authorizing its Governor to veto the action of any of the state's commissioners within ten days of receipt of the minutes of the meeting at which the vote was taken.

On December 28, 1994, former Governor of Pennsylvania Robert Casey appointed Max Pievsky as a commissioner of the DRPA.  The commission, signed by the Governor, states that Pievsky shall hold office until December 28, 1999.  On January 22, 1996, Pievsky received a telephone call from Leslie Gromis, Director of Governor Ridge's Office of Public Liaison.  Gromis informed Pievsky that the Governor was disappointed in Pievsky's vote for a new chairperson for the DRPA Board on January 17, 1996.  Gromis further stated that if Pievsky did not resign the next day, the Governor would make an appointment to the DRPA to replace him.

III.

On January 23, 1996, Pievsky filed suit in the Commonwealth Court of Pennsylvania seeking to enjoin Governor Ridge from removing him as a commissioner.  The Governor removed the case to the United States District Court for the Middle District of Pennsylvania, asserting that Pievsky's claims arise under the laws of the United States pursuant to 28 U.S.C. §§ 1331 and 1441(b).

The district court issued an opinion and entered an order denying Pievsky's requests for declaratory judgment and permanent injunctive relief.  In its interpretation of the Compact, it held that the Governor may remove Pievsky prior to the expiration of his term in 1999.  Pievsky filed a notice of appeal and a motion in the district court for a stay pending appeal.  The district court granted a stay prohibiting the Governor from removing Pievsky pending resolution of an appeal to this Court.  We vacated the district court's grant of a stay pending appeal.

Thereafter, Pievsky was removed by the Governor as a DRPA Commissioner. Pievsky appealed to the Supreme Court for a stay preventing his removal from office. The application was denied. The matter is now before us on Pievsky's appeal of the district court's order denying his application for a declaratory judgment and injunctive relief reinstating him to the position of commissioner of the DRPA.

## IV.

The issue we must decide is strictly one of statutory construction. Does the DRPA Compact allow the Governor of Pennsylvania to remove a commissioner to the DRPA at will and prior to the expiration of his term?

### A.

Since the Compact is an interstate agreement which requires the consent of Congress, such Congressional consent transforms the Compact into an agreement pursuant to federal law. SeeCuyler v. Adams, 449 U.S. 433, 438, 101 S. Ct. 703, 707 (1981); see also Petty v. Tennessee–Missouri Bridge Comm'n, 359 U.S. 275, 278, 79 S.Ct. 785, 788 (1959); Delaware River Joint Toll Bridge Comm'n v. Colburn, 310 U.S. 419, 427, 60 S. Ct. 1039, 1041 (1940). Our interpretation of the terms and conditions of the Compact is, therefore, governed by federal law. See Cuyler, 449 U.S. at 438, 101 S. Ct. at 707; see also Petty, 359 U.S. at 278, 79 S. Ct. at 788.

Though state law is not binding, federal courts show deference to prior state adjudications and rulings in construing an interstate compact. See State ex. rel. Dyer v. Sims, 341 U.S. 22, 28, 71 S. Ct. 557, 560 (1951) ("To determine the nature and scope of obligations as between States [when] they arise through the legislative mean of compact . . . is the function and duty of the Supreme Court of the Nation. Of course every deference will be shown to what the highest court of a State deems to be the law and policy of its State . . ."); see also Petty, 359 U.S. at 278, n.4, 79 S. Ct at 788, n. 4 ("While we show deference to state law in construing a compact, state law as pronounced in prior adjudications and rulings is not binding"); Seattle Master Builders Ass'n v. Pacific N.W. Elec. Power & Conserv. Planning Council, 786 F.2d 1359, 1365 (9th Cir. 1986), cert. denied, 479 U.S. 1059, 107 S. Ct. 939 (1987) ("While congressional consent gives an interstate compact some attributes of federal law, the Council members' appointment, salaries, and administrative operations are pursuant to the laws of the four individual states, within parameters set by the Act.").

### B.

The Compact is merely an agreement between states that has received the imprimatur of Congress. The interpretation of the Compact must be grounded and based upon the very language of the instrument. See Texas v. New Mexico, 482 U.S. 124, 128, 107 S. Ct. 2279, 2283 (1987). The Compact between Pennsylvania and New Jersey states that "[s]ix of the eight commissioners for the Commonwealth of Pennsylvania shall be appointed by the Governor

of Pennsylvania for terms of five years." DRPA Compact, Article II, 36 P.S. § 3503. It does not explicitly state whether the commissioners may be removed by the governor prior to the expiration of their term.

The long-standing rule in the context of federal appointments is that "[i]n the absence of specific provision to the contrary, the power of removal from office is incident to the power of appointment." Keim v. United States, 177 U.S. 290, 293, 20 S. Ct. 574, 575 (1900); accord Myers v. United States, 272 U.S. 52, 161, 47 S. Ct. 21, 40 (1926); see also Kalaris v. Donovan, 697 F.2d 376, 389 & n. 54 (D.C. Cir.) cert. denied, 462 U.S. 1119 (1983) (quoting Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 896, 81 S. Ct. 1743, 1749 (1961)). Pennsylvania has also adopted this principle of law. SeeAmerican Fed'n of State, County, and Mun. Employees v. Shapp, 280 A.2d 375, 377 (1971); see also Commonwealth ex. rel. Haymaker v. Black, 50 A. 1009 (1902). The Compact explicitly gives the Governor of Pennsylvania the power to appoint six commissioners to the DRPA. Accordingly, pursuant to federal law, there is a presumption that the Governor also has the authority to remove those six commissioners prior to the end of their terms.

Pievsky argues that since the DRPA Commissioner's term of office is five years, as compared to the Governor's four year term of office, the Pennsylvania legislature and Congress intended to limit the Governor's power of removal. We disagree. The fact that the Governor's term of office is shorter than that of the commissioners does not indicate an intent on the part of the legislature to limit the Governor's ability to remove his appointees. If the Pennsylvania legislature intended such a limitation, it would have stated so in the Compact. Instead, the Compact simply reads that the Governor of Pennsylvania shall appoint a DRPA Commissioner for a term of five years. Since the power to remove is incident to the power to appoint, we hold that under the terms of the Compact the Governor of Pennsylvania has the authority to remove a DRPA Commissioner at will.

We believe that the difference in the length of terms of office is irrelevant. Since the Compact provides that commissioners may hold office after the expiration of the term for which they are appointed, and "no period during which any commissioner shall hold over shall be deemed to be an extension of this term of office for the purpose of computing the date on which his successor's term expires," DRPA Compact, Article II, 36 P.S. § 3503, a commissioner's term of office may in fact be for four years or less. This would occur if a commissioner is succeeding a prior commissioner who has continued to hold office after the expiration of his term of office.

Pievsky also contends that interpreting the Compact to permit the Governor to remove a commissioner at will vitiates the plain language of the Compact which provides that six of the Commonwealth's commissioners "shall be appointed by the Governor of Pennsylvania for terms of five years." He asserts that five years means five years, and not less than five years. We are not persuaded. It is a long-standing rule in the federal courts that a fixed term merely provides a time for the term to end. The

fixed term is merely a "cap" with the appointee removable at will.  See Parsons v. United States, 167 U.S. 324, 17 S. Ct. 880 (1897).  We read the term "five years" as a means of limiting the length of the term of office, not as a prohibition on the Governor's removal authority.

C.

Pievsky next maintains that under federal law the terms of the DRPA Compact evidence an intent by the legislatures to limit the Governor's removal power because the Compact states that six of Pennsylvania's commissioners "shall be appointed by the Governor . . . for terms of five years." Compact art. II.  The case law cited by Pievsky in support of his argument are readily distinguishable.  In Humphrey's Executor v. United States, 295 U.S. 602, 55 S. Ct. 869 (1935), the Supreme Court reviewed President Roosevelt's attempt to remove a member of the Federal Trade Commission ("FTC").  Pursuant to the Federal Trade Commission Act, 15 U.S.C. §§ 41, 42, commissioners of the FTC were appointed for fixed rotating terms.  The Federal Trade Commission Act provides that "[a]ny commissioner may be removed by the President for inefficiency, neglect of duty, or malfeasance in office."  15 U.S.C. § 41.  The Supreme Court held that in light of the statutory language limiting removal, "the fixing of a definite term subject to removal for cause, unless there be some countervailing provision or circumstance indicating the contrary, which here we are unable to find, is enough to establish the legislative intent that the term is not to be curtailed in the absence of such cause."  Humphrey's Executor, 295 U.S. at 624, 55 S. Ct. at 872.  The statute at issue in Humphrey's Executor contained clear language limiting the removal authority of the President -- such language is absent from the Compact.

Moreover, the Supreme Court in Humphrey's Executorconsidered the character of the commission as an essential basis for its holding.  The Court determined that the FTC was a nonpartisan body, charged "with the enforcement of no policy except the policy of the law", and that "[i]ts duties are neither political nor executive, but predominantly quasi judicial and quasi legislative."  295 U.S. at 624, 55 S. Ct. at 872.  The Humphrey's Executor court noted that

> [I]t is quite evident that one who holds his office only during the pleasure of another, cannot be depended upon to maintain an attitude of independence against the latter's will.

295 U.S. at 629, 55 S. Ct. at 874.  Accordingly, the Humphrey's Executor Court concluded that the President did not have the authority to remove a member of the FTC prior to the expiration of that member's term of office for reasons in addition to those specifically stated in the statute.  In contrast, the DRPA is neither a quasi legislative or quasi judicial body.  Also, in contrast to the character of the FTC, the DRPA is a politically sensitive body that must be responsive to the programs and policies of the administration presently in office.

We have previously discussed how the DRPA officers must be politically accountable in Peters v. Delaware River Port Authority, 16 F.3d 1346, 1354-55 (3d Cir.), cert. denied, 115 S. Ct. 62 (1994). In Peters, the Secretary of the DRPA brought suit claiming that the DRPA infringed his constitutional rights of free speech and association by failing to reappoint him as its Secretary solely because he was a member of the New Jersey Republican Party. We rejected his claim, finding that party affiliation of the officers of the DRPA was relevant to the effective functioning of the DRPA. We stated,

> The DRPA has broad powers, leaving much room for principled disagreement on policy goals or their implementation.
>
> . . .
>
> The policy and political issues, including economic considerations, arising in an entity such as the DRPA are many. If tolls are raised, bridges fall into disrepair, or traffic is congested, there are surely political consequences. Whether decent roads and transit systems will be made available to all segments of the communities, or will be provided in a manner perceived as favoring some or excluding others, raises important and sensitive social, economic and political questions. . . . Since the governors of New Jersey and Pennsylvania directly appoint fourteen of the sixteen member Board of Commissioners, political responsibility for the DRPA's successes and failures can be expected to fall on the ruling administration of each state.
>
> . . .
>
> Obviously, the party affiliation or policy views of the officers in the DRPA could be relevant to the effective presentation and implementation of particular policy goals. If the states preferred huge increases in spending for the construction of bridges, for example, they might legitimately prefer that high positions in the DRPA not be filled with individuals belonging to a party which advocates decreased government spending.

16 F.3d at 1355. Therefore, the DRPA Commissioners must be accountable to the administration in office in order for the DRPA to function properly.

The goals of each state are accomplished only through the DRPA's responsiveness to each state. In order to ensure such responsiveness, the Governor must have the authority to remove Pennsylvania's appointed commissioners. The fact that Pennsylvania's representation on the Commission is comprised exclusively of Executive Department appointees and officials lends support to the conclusion that the DRPA is meant to be responsive to the Executive Branch of the Commonwealth of Pennsylvania. Six of Pennsylvania's eight commissioners are appointed by the governor, and the remaining two members who

serve ex-officio are the State Treasurer and the Auditor General, both of whom are officers of the Executive Department. Compact art. II; 36 P.S. § 3503. The ability of the Governor to remove DRPA Commissioners ensures that the commissioners are politically accountable to each state's administration. This case is clearly distinguishable from the Supreme Court's holding in Humphrey's Executive.

The facts underlying Wiener v. United States, 357 U.S. 349, 78 S. Ct. 1275 (1958) are also distinguishable. In Wiener, the Supreme Court reviewed President Eisenhower's attempt to remove a member of the War Claims Commission ("WCC"). Congress established the WCC to adjudicate claims by United States citizens against Japan as a result of World War II. The statute was silent with regard to the removal of members of the WCC. It provided that the commissioners' terms would expire simultaneously with the life of the Commission. The Supreme Court concluded that the adjudicatory nature of the task imposed by Congress on the WCC lead to the conclusion that Congress did not leave room for the President to remove members and replace them with individuals of his own choosing. The Court stated,

> If, as one must take for granted, the War Claims Act precluded the President from influencing the Commission in passing on a particular claim, a fortiori, it must be inferred that Congress did not wish to have hang over the Commission the Damocles' sword of removal by the President for no reason other than that he preferred to have on that Commission men of his own choosing.

Wiener, 357 U.S. at 356, 78 S. Ct. at 1279. Here, the DRPA does not perform any tasks that may be classified as adjudicatory. In contrast to the WCC, the Compact between Pennsylvania and New Jersey envisions that the administration of each state would influence the DRPA in deciding which policies to implement and which goals to pursue.

We also find that Borders v. Reagan, 518 F. Supp. 250 (D. D.C. 1981), order vacated as moot, 732 F.2d 181 (D.C. Cir. 1982), is distinguishable. In Borders, the district court held that President Reagan could not remove at will a member of the District of Columbia Judicial Nominating Commission that President Carter had appointed. The District of Columbia Self-Government and Governmental Reorganization Act ("Act") provides that the Commission would consist of seven members who "shall serve" for terms of six years, except for the member appointed by the President who "shall serve" for a term of five. 11 D.C.Code App. § 434 (Supp. IV 1977). The Act made no provision for the removal of commission members.

The district court in Borders held the language of the statute made clear that Congress did not intend a member of the commission would serve only at the pleasure of the appointing authority; rather, once an appointment was made it anticipated that the member would serve a complete term. The plain language of the Act provides that a member "shall serve" for the term of years. The Act makes no provision for the removal of a member, but does provide for the appointment of a member when a vacancy

occurs. The district court noted that the Act contemplated that vacancies would occur only at the expiration of a given term: The Act provides that for vacancies occurring "other than [upon] the expiration of a prior term," the new member would serve only for the "remainder of the unexpired term of his predecessor." Act at § 434(b)(2). Thus, even if Borders were binding on us, the district court's conclusion in that matter that Congress did not intend a commissioner to be removed at will is distinguishable.

The plain language of the DRPA Compact does not indicate, as the language of the statute in Borders did, that the state legislatures contemplated vacancies on the DRPA Board would occur only at the expiration of DRPA members' expired terms. Moreover, the court's decision in Borders rested on additional grounds that are not present in this case. The Act provided for staggered terms for six of the commissioners, which the court determined was evidence of Congressional intent that the members be isolated from political considerations and political changes.

Pievsky also asserts that the DRPA is an interstate entity which is not under the control of the Commonwealth of Pennsylvania or the State of New Jersey. He cites Hess v. Port Authority Trans-Hudson Corp., __ U.S. __, 115 S. Ct. 394 (1994), for the proposition that "[b]ecause Compact Clause entities owe their existence to state and federal sovereigns acting cooperatively, and not to any 'one of the United States,'...their political accountability is diffuse; they lack the tight tie to the people of one State that an instrument of a single State has." 115 S. Ct. at 401. We agree that the DRPA is not under the control of any one state. As we stated in Peters the DRPA is "not designed to further the political agenda of any one state or administration." Peters, 16 F.3d at 1355. Nevertheless, pursuant to the appointing process, Pennsylvania-appointed DRPA officials are under the control of the Pennsylvania Governor, just as New Jersey-appointed DRPA Commissioners must be politically accountable to the Governor of New Jersey.

D.

As previously discussed, in Humphrey's Executor the Supreme Court stated "the power of the President to remove an officer shall prevail over the authority of Congress to condition the power by fixing a definite term and precluding a removal except for cause will depend upon the character of the office." 295 U.S. at 631-32, 55 S. Ct. at 875. In Morrison v. Olson, 487 U.S. 654, 108 S. Ct. 2597 (1988), the Supreme Court clarified the meaning of the "character of the office" inquiry that courts must undertake in assessing whether Congress has impermissibly restricted the executive branch's authority to remove an appointed official. The Morrison Court was faced with the question of whether the provisions of the Ethics in Government Act impermissibly restricted the Attorney General's ability to remove the independent counsel. The Court stated that the legitimacy of congressional limitations on the chief executive's powers of removal turns upon "whether the removal restrictions are of such a nature that they impede the President's ability to

perform his constitutional duty, and the functions of the officials in question must be analyzed in that light."  Id. at 690-91, 108 S. Ct. at 2619.

The Morrison Court went on to hold that the Act did not impermissibly interfere with the President's ability to perform his constitutional duty because, though the President could not remove the independent counsel at will, the statute provided that the President, through the Attorney General, could remove the independent counselor for good cause.  The Supreme Court reasoned that this ability gives the President "ample authority to assure that the counsel is competently performing his or her statutory responsibilities . . . ."  Id. at 692, 108 S. Ct. at 2620.

Pievsky's case is distinguishable from Morrison because the "character of office" analysis is based on a separation of powers inquiry which is not at issue here; and in any event, here, the Governor's inability to remove DRPA Commissioners prior to the expiration of their terms would impede his ability to carry out his functions as Chief Executive of the Commonwealth of Pennsylvania.  As Governor, the defendant in this case is charged with ensuring that the laws of the state are "faithfully executed."  Pa. Const. art. II, § 2.  The Governor's obligation to ensure the proper functioning of the DRPA is one of the duties charged to him pursuant to the Commonwealth's Constitution. Moreover, The Pennsylvania Constitution states:

> All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime.  Appointed civil officers, other than the judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed.

Pa. Const. art. VI, § 7.  Pievsky is neither a "judge of the courts of record," nor "a civil officer elected by the people." Absent language in the Compact to the contrary, which we do not find, the Governor's constitutional duty includes removing appointed officials at his pleasure.  Because the Compact does not limit the Governor's removal power, the Governor may exercise his power under the Pennsylvania Constitution to remove appointed officials to the DRPA Board.  We agree with Pievsky's contention that the Compact is in the nature of federal law, and, under the Supremacy Clause of the U.S. Constitution, could limit the Governor's ability to remove his appointed officials.  However, as discussed above, we conclude under a federal law analysis that the legislatures which passed the Compact did not intend to restrict the Governor's ability to remove DRPA Commissioners in this manner.

The appointed members of the DRPA are "policy makers" who exercise executive powers and are expected to carry out the policies of the current administration of each state; they are not comparable to the commissioners of the FTC, the commissioners of the WCC, or the independent counsel in Morrison.  Far from needing independent appointees, "the DRPA needs officers who are capable of efficiently, effectively, and loyally accessing the

political channels that influence the DRPA's agenda and direction." Peters, 16 F.3d at 1356. Considering the mission of the DRPA, and the burden that inter-state conflicts place on the effective functioning of this bi-state authority, the legislatures could not have intended to create a board on which Pennsylvania's members are independent of the current Governor.

E.

Though state law is not binding, federal courts show deference to prior state adjudications and rulings in construing an interstate compact. See State ex. rel. Dyer v. Sims, 341 U.S. 22, 28, 71 S. Ct. 557, 560 (1951). Pennsylvania law is in accord with federal law that the Pennsylvania Governor may remove a DRPA commissioner at will and prior to the expiration of the term. The removal of state officers in Pennsylvania is governed by the Commonwealth's Constitution which provides that "[a]ppointed civil officers, other than the judges of the courts of record, may be removed at the pleasure of the power by which they shall have been appointed." Pa. Const. art. VI, § 7. In the absence of statutory language providing otherwise this constitutional provision governs the removal of appointed officials. Watson v. Pennsylvania Turnpike Comm'n, 125 A.2d 354, 356-57 (Pa. 1956). The legislature may "impose such terms and limitations with reference to the tenure and removal of an incumbent [state official] as it sees fit." Id. at 356.

The Pennsylvania Supreme Court has held that where a statute provides for fixed terms with staggered expiration dates, the legislature intended that those appointed shall not be removable at the will of the appointing authority. Id. at 356-57; see alsoCommonwealth ex. rel. Sortino v. Singley, 392 A.2d 1337 (Pa. 1978); Bowers v. Pennsylvania Labor Relations Bd., 167 A.2d 480, 484-85 (Pa. 1961); Commonwealth ex. rel. Hanson v. Reitz, 170 A.2d 111 (Pa. 1961). However, the mere fixing of a definite term does not override the dictates of Article VI, § 7 of the Constitution which gives removal power to the appointing authority. See Schluraff v. Rzymek, 208 A.2d 239 (Pa. 1965) (plaintiff appointed to fixed term removable at-will); see alsoNaef v. City of Allentown, 227 A.2d 888, 890-891 (Pa. 1967)(plaintiff appointed to fixed term of four years removable at-will; "solicitor is an important confidant . . . in the administration of the city's business. To hold that one who is unacceptable must be retained in such a position would lead to a seriously disturbed municipal situation."); Commonwealth ex. rel. Schofield v. Lindsay, 198 A. 635 (Pa. 1938). Pennsylvania case law provides that the staggering of terms, not the mere fixing of a definite term in office, bars the Governor from removing an appointed official at will. See Naef, 227 A.2d at 890; see alsoSchluraff, 208 A.2d at 239. Therefore, in light of the fact that the DRPA Commissioners' terms are fixed and not staggered, the Pennsylvania Constitution, as interpreted by the Pennsylvania Supreme Court, does not preclude the Governor from removing Pievsky prior to the expiration of his term.

We note that the Pennsylvania Attorney General has officially opined that Pennsylvania's appointees to the DRPA are

removable at will. See Pennsylvania Attorney General's Official Opinion, No. 280 issued on March 24, 1939 at 1939-40. Article VI, Section 4 was renumbered as Article VI, Section 7 in 1966. Pennsylvania courts and state agencies accord deference to the formal opinions of Pennsylvania's Attorney General on matters of statutory interpretation. Baird v. Township of New Britain, 633 A.2d 225, 229 n. 7 (Pa. Commw. Ct. 1993), allocatur denied, 642 A.2d 488 (1994); see also Schell v. Eastern York Sch. Dist., 500 A.2d 896 (Pa. Commw. Ct. 1985). We note that the Attorney General of New Jersey has also issued an opinion that the Pennsylvania appointees to the DRPA Board are removable at will by the Governor of Pennsylvania. Def.'s Supplemental Appendix, Memorandum from Attorney General George F. Kugler, Jr. to Governor William T. Cahill, October 6, 1971. We need not decide the extent of deference due in this situation in light of all the other convincing bases for our conclusion that by reason of the state constitutional provisions governing the removal of appointed officials, and given that the DRPA commissioners' terms are fixed and not staggered, the Governor has the power to remove appointed DRPA Commissioners at will.

V.

For the foregoing reasons, we conclude that the Governor of Pennsylvania has the power to remove an appointed DRPA Commissioner at will and prior to the expiration of the term. Accordingly, we will affirm the order of the district court entered on April 12, 1996. Each party to bear its own costs.