## Boyd v. Lower Merion Township

Before Forrest, P. J., Groshens and Smillie, JJ.:

*Roger B. Reynolds*, for plaintiff.

*William P. Manning*, for defendant.

SMILLIE, J., February 1, 1965. — This is a motion by plaintiff for judgment on the pleadings. The action was brought by plaintiff, John A. Boyd, a police officer, to recover a fine of $15 which was withheld from his wages on order of a board of inquiry established by Lower Merion Township which is a first class township. The facts of the case are these:

On July 14, 1961, the Lower Merion Accident Inquiry Board was created by an order of the township manager. That order provided that whenever a township vehicle is involved in an accident, the supervisor of the vehicle bureau shall convene a board of inquiry for investigation of the accident, hold a hearing and make a recommendation of disciplinary action, if appropriate. If members of the police department are involved, the order provides the board shall consist of the supervisor of the vehicle bureau, the traffic safety officer, the cap-

tain of police, and the superintendent of police. After holding an investigation and hearing, the board may recommend to the township manager: (1) action; (2) caution; (3) reprimand; (4) fine, $5 to $100; (5) removal as a driver, temporarily or permanently and (6) dismissal.

Upon receipt of the board's recommendation, the township manager may approve, disapprove or amend the recommendation of the board in his discretion. There is no provision for appeal.

Plaintiff Boyd, a police officer, in performance of his duties, responded to an emergency police call. In operating his police car, he accidentally collided with a private citizen's automobile, causing damages to the police car of $160.10. Shortly thereafter, the board of inquiry of Lower Merion Township held a hearing at which plaintiff was present and testified in his own behalf. He was not represented by counsel, and he was present by invitation and not by right. The captain of police preferred charges against plaintiff which were approved by the superintendent of police, and the board imposed a fine of $15 which was deducted from plaintiff's wages.

Plaintiff's motion for judgment on the pleadings raises (1) the propriety of the procedure followed in this matter, which is entirely independent of the township civil service commission; (2) the power of the superintendent of police to impose a fine on plaintiff, and (3) the legal authority of the township to establish an accident inquiry board.

Boyd, the police officer herein, was acting, perhaps with haste, but there is no dispute that he was pursuing his duty, acting in the public interest without willful negligence when the accident occurred which brought about the fine.

There is legislative procedure provided for first class townships in the civil service commission law

which is adequate, complete and does not require a supervisory board of inquiry.

The civil service provisions in The First Class Township Code of June 24, 1931, P. L. 1206, art. VI, secs. 644 and 645, as amended by the Act of May 27, 1949, 53 PS §55644, provide that no person employed in any police or fire force of any township shall be suspended, removed or reduced in rank except for six certain specified reasons.

It is significant that the legislature thought it important enough to protect the police officer against unwarranted, arbitrary abuse of the general discretion of the commission to spell out in specific categories all of the infractions for which the police officer could be disciplined.

The First Class Township Code further provides: A written statement of charges furnished the person after they are filed with the civil service commission; the right to a hearing; written answers may be filed to any charges; the person against whom the charges are made may be present in person and by counsel; stenographic record of testimony taken. The accused police officer also has the right of appeal from the commission's decision.

The accused may be suspended, pending the outcome of the proceedings, but, if the commission fails to uphold the charges, he must be reinstated with full pay.

In view of the obvious care with which the legislation was drawn to protect the police officer and yet assure efficient administration of a police department, it would seem to be impertinent to permit a first class township, by appointing a board or an individual, to avoid the provisions of the Act of Assembly. Creating the board was improper but providing that the board so appointed has no power except at the whim of the township manager is to compound the error. It is an unreasonable abuse of the township authority unabash-

edly designed to emasculate the civil service commission law. The civil service commission may be cumbersome, as are all protective measures, but it does provide adequate procedure for discipline of a police officer at the same time protecting his rights. The legislature cannot and should not be so peremptorily ignored.

In Gideon v. Wainwright, 372 U. S. 335; Jackson v. Deno, 378 U. S. 368; Escobedo v. Illinois, 378 U. S. 478; United States v. Tateo, 377 U. S. 463, and in Jencks v. United States, 353 U. S. 657 (1957), the Supreme Court of the United States expressed in positive language a firm purpose of protecting the constitutional rights of individuals against abuse of authority.

These far-reaching, precedent-setting rules promulgated by the court may prevent or frustrate law enforcement officers in their efforts to apprehend criminals or convict them when once caught, yet the purpose of the rule is admirably concerned with protecting basic human rights.

It would seem that the judiciary could also provide a conscientious police officer, acting expeditiously on the public's business, in line of duty, the same safeguards for his rights.

The board of inquiry as established by Lower Merion is not sovereign. It is little more than weakly advisory in character. Its decisions, recommendations or opinions can be altered, amended, changed or reversed by the arbitrary action of one man, the township manager. A board, so created, is merely a front to give the appearance of providing police action with police interest assured when, in point of fact, only the township manager has any power or control over the decision.

We realize that a policemen's lot is not a happy one, as Gilbert and Sullivan parodied so many years ago, nevertheless, we cannot believe that the pendulum has swung so far as to protect the rights of confessed culprits preying upon the public, yet fail to include in that

protection the honest police officer. It is unconscionable that a police officer should not have the constitutional right of being faced by his accuser; be represented by counsel; with the right to call witnesses in his own behalf before he is penalized and punished. Indeed, since he is also deprived of the right to appeal, the fearfully absolute power of the township manager makes mockery of the machinery of the board and the authority of the superintendent of police.

There is no need for such drastic denials of a police officer's constitutional rights as a citizen. While recognizing that there is a need for immediate power of discipline over the police, such a problem is not raised in the instant case. The superintendent at present, without the board, has the right to suspend or punish a derelict police officer. The police officer may resort to the civil service commission for redress. The immediacy of the superintendent's power is thus in no way abrogated.

The solicitor for the township frankly admits that the board of inquiry created in 1961 by Lower Merion Township was to circumvent the operation of the civil service commission. The local township commissioners cannot properly bypass the law or take away those rights. The able solicitor for the township, citing several cases such as Witkin v. City of Philadelphia, 110 Pa. Superior Ct. 489 (1933) ; Osterheldt v. City of Philadelphia, 113 Pa. Superior Ct. 8 (1934) ; McCoach v. Philadelphia, 273 Pa. 317 (1922), attempts to justify it on the strained theory that the City of Philadelphia permits its superintendent or commissioner of police to penalize police officers in a similar peremptory fashion. Philadelphia operates under its own laws with different conditions and circumstances than exist in Lower Merion Township of Montgomery County.

In all cases cited by the solicitor for the township arising in Philadelphia or elsewhere, the superintend-

ent of police, the police commissioner, or police captain have disciplinary powers, and, when on a board of inquiry, the board is the final resort. Not so with the Lower Merion board. The board of inquiry of Lower Merion not only evades the civil service commission but it supersedes the superintendent of police and the other police officials on the board and leaves the final decision to the sole discretion of the township manager. In the cases cited by the solicitor for the township, there are no instances where any township manager or one individual has absolute final decision. One man authority is dangerous even in emergency situations. Admittedly, it is far more expeditious, less cumbersome and perhaps less financially expensive, but as Thomas Carlyle said, "Man has never yet been able to exercise authority without abusing it". Such a patent attempt to emasculate the police department is not only unwise, but unsound in law. The older the government, the more inclined it is to become bureaucratic and tyrranical. It is against these constant abuses of authority that those entrusted with justice must be ever vigilant.

It is interesting to note that as recently as December 30, 1964, the Federal Bureau of Investigation's Director, J. Edgar Hoover, sharply criticised the creation of civilian police review boards, and Mr. Hoover is quoted in the newspaper of that date as follows:

"A questionable move currently being championed in some localities is the establishment of civilian review boards . . . such panels represent a backward step for law enforcement toward ineptness and mediocrity . . . The police executive cannot become a mere pawn of bureaucratic committees".

While it may be said that a $15 fine case should not provoke such lavish language, we feel that the creation of the one-man judge with a phantom board is such a denial of constitutional rights as to bring oppressive measures into existence. Long later, such measures

frequently are improperly corrected by disorder or worse. Thus, while the purpose of the township is clearly in the interest of efficiency and discipline, these exemplary standards must yield to the loftier ideals of individual human rights.

Therefore, the board of inquiry is declared invalid; the action of the board in levying the fine is reversed; and judgment is entered against the defendant, Lower Merion Township, and in favor of plaintiff, John A. Boyd, in the amount of $15.

### ORDER

And now, February 1, 1965, after argument before the court en banc, consisting of E. Arnold Forrest, P. J., David E. Groshens, J., and Frederick B. Smillie, J., plaintiff's motion for judgment on the pleadings is sustained and judgment is entered for plaintiff and against defendant in the amount of $15.